Charles McCormick

*v.*

Caroline Miller *et al.*

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1. Rescission of contracts—*for want of fair dealing and honesty.* While courts of equity do not sit to enforce mere moral rules, the only sanction for which is found in public opinion, yet it is part of their mission to see that common honesty, good faith and fair dealing shall be observed in the ordinary business affairs of life.

2. When a party, in procuring conveyances of valuable property to be made to himself without any consideration, knows that the fee of the same is in the grantors, and also knows that they are ignorant of that fact, they supposing they have no title to convey, and fails to inform them of their rights, and they convey, through mere kindness, to enable him to make a loan on the property, under the belief that the title is already in him, a court of equity will set the conveyances aside, when the rights of innocent purchasers have not intervened.

3. Recording act—*how far notice thereunder is conclusive.* The presumption that a party has notice of the contents of a deed from the record thereof, whereby he has an interest, is not conclusive, but may be rebutted by evidence to the contrary in a suit to avoid a conveyance made by such party, on the alleged ground of ignorance of his rights, where the grantee is not a *bona fide* innocent purchaser, or the rights of innocent purchasers have not intervened. But in the contest between the grantor and an innocent purchaser from the fraudulent grantee, the record would be conclusive upon the former.

4. New trial—*in chancery—on the evidence.* The finding of the court below as to a question of fact in a chancery case, will not be disturbed on appeal or error, where, from a consideration of the entire testimony bearing upon the same, the reviewing court has a well founded doubt as to how the question should have been determined, without any clear conviction the one way or the other.

Appeal from the Circuit Court of Peoria county; the Hon. John Burns, Judge, presiding.

Mr. Dan. R. Sheen, for the appellant:

Complainants in the original bills having virtually bought at an administrator's sale, should have examined the title, as the rule of *caveat emptor* applies. *Bishop et al.* v. *O'Connell*, 69 Ill. 434.

The law presumes that a purchaser inspects the records before buying, and if he does not, he assumes all the risks of title. *Chicago, Rock Island and Pacific R. R. Co.* v. *Kennedy et al.* 70 Ill. 364.

McCormick claims to have purchased and paid for this property. This position is consistent with honesty, and is presumed to be true. *O'Neil* v. *Boon et al.* 82 Ill. 589; *Munn* v. *Burges*, 70 id. 604.

This court has decided that such persons are presumed to know their rights, and it is "not incumbent upon either party to advise or remind the other of them." *Watt* v. *McGaillard*, 67 Ill. 518.

One person has no right to rely upon the representations of another, in regard to title, where the records are easy of access; and if he sees fit to do so, it is at his own peril. *Buchanan* v. *International Bank*, 78 Ill. 503.

A person has not only constructive notice, but actual notice of whatever appears upon the face of his own title. *White* v. *Kibby*, 42 Ill. 510. And generally, upon the question of notice, see *Russell* v. *Ransom*, 76 Ill. 171; *Doran* v. *Mullen*, 78 id. 346.

Upon the question of fraudulent concealment, and fraudulent representations, see *Van Horn* v. *Keenan*, 28 Ill. 448; *Miller* v. *Craig*, 36 id. 110; *Noetling* v. *Wright*, 72 id. 390; *Hall* v. *Jarvis*, 65 id. 304; *Tuck* v. *Downing*, 76 id. 97; *Gage* v. *Lewis*, 68 id. 615; *Grant et al.* v. *Fellows*, 58 id. 242; *Wood* v. *Seward*, 46 id. 457; *Bond et al.* v. *Ramsey*, 89 id. 29; *Mitchell* v. *McDougal*, 62 id. 502; *Frank et al.* v.

*Tolman,* 75 id. 648; *Campbell* v. *Carter,* 14 id. 286; *Rupert* v. *Mark et al.* 15 id. 542.

Mr. E. P. SLOAN, and Mr. J. W. COCHRAN, for the appellees:

Fraud vitiates any contract, and all acts between the parties to it. *Sims* v. *Klein,* Breese, 302; *Deere* v. *Lewis,* 51 Ill. 254; *Jamison* v. *Beaubien,* 3 Scam. 113; *Trevo* v. *Walters,* 4 id. 35; *Walker* v. *Hough,* 59 Ill. 375.

Fraud may consist in making false representations, with knowledge of their falsity, with a design to deceive and defraud, or in a willful concealment of the truth for a similar purpose. *Lockridge* v. *Foster,* 4 Scam. 569; *Mitchel* v. *Deeds,* 49 Ill. 416; *Case* v. *Ayers,* 65 id. 142; *Allen* v. *Hart,* 72 id. 107; *Mitchell* v. *McDougal,* 62 id. 501.

A conveyance which has been obtained through fraud and covin, will be set aside; and it is not in the mouth of the fraudulent grantee to say that his grantor did not exercise proper precaution. *Lloyd* v. *Higbee,* 25 Ill. 603.

Fraudulent intent may be found from the acts of the purchaser after the sale. *Brown* v. *Schuler,* 41 Ill. 192.

Courts of equity can set aside and cancel deeds fraudulently obtained. *Clement* v. *Evans,* 15 Ill. 92; *Kennedy* v. *Northrup,* 15 id. 148.

Fraud may be proved by circumstances. *Greely* v. *Sample,* 22 Iowa, 338; *Bryant et al.* v. *Simoneau et al.* 51 Ill. 327; *Bullock* v. *North,* 49 id. 222; *Bois* v. *Herney,* 32 id. 130; *Reed* v. *Noxon,* 48 id. 323; *Rothgerber* v. *Gough,* 52 id. 436; *Swift* v. *Lee,* 65 id. 336.

Circumstances so strong as to create a suspicion of fraud, and yet some doubt remains—the fraud is proven. *Bryant* v. *Simoneau,* 51 Ill. 327; *Swift* v. *Lee,* 65 id. 336.

Where a party is ignorant of his own rights, but which are known to the other party. *M'Carthy* v. *Decaix,* 2 Rus. & Mylne, 614.

The statutory quitclaim deed from McCormick to Hawkins, conveying "the then existing legal or equitable rights of the grantor in the premises," will not protect the grantee against the fraudulent act of his grantor in obtaining his title. 3 Wash. on Real Estate, 356; *May* v. *LeClair*, 11 Wall. 232.

That which is sufficient to put a party upon inquiry, is notice of whatever the inquiry, reasonably prosecuted, would disclose. *Russell* v. *Ranson*, 76 Ill. 167; *Watt* v. *Scofield*, 76 id. 261; *Kennedy* v. *Green*, 3 Mylne & K. 699; *Dickey* v. *Lyon*, 19 Iowa, 544; *Smith* v. *Jackson*, 76 Ill. 254.

Hawkins must have paid his purchase money, to be protected. Story's Equity, secs. 64 c, and 1502, and authorities cited; *Powell et al.* v. *Jeffries*, 4 Scam. 387; *Brown* v. *Welch*, 18 Ill. 343; *Roseman et al.* v. *Miller*, 84 id. 299.

Proof that payment has been secured, is not sufficient. *Brown* v. *Welch*, 18 Ill. 343; *Straus* v. *Kranert*, 56 id. 254.

The notes given by Hawkins to McCormick for said property were not a good consideration. *Somes* v. *Skinner*, 16 Mass. 351; *Straus* v. *Kranert*, 56 Ill. 254.

Mr. Justice Mulkey delivered the opinion of the Court:

On the 19th day of August, 1878, Caroline Miller and Anna Fredericks filed in the Peoria county circuit court their respective bills in chancery, against Charles McCormick, John Birks, Maria M. Birks, John Hawkins, and Daniel R. Sheen, to set aside certain conveyances of real estate situate in Peoria county, this State. John Birks and Maria Birks answered, admitting the material facts alleged, and also filed a cross-bill, setting up substantially the same state of facts charged in the original bills, and praying similar relief. The cases were subsequently consolidated, and the other defendants answered the original bills, denying the main facts relied on for relief.

It appears that the land in controversy formerly belonged to Kitridge D. Earl, being certain portions of lots 2, 4 and 6,

in block 19, in the city of Peoria; that Adeline H. Earl, his wife, at the same time owned other portions of the same lots; that on the 30th day of April, 1850, Earl conveyed the portions of these lots owned by him to David Sanborn, in fee, in trust for his wife, for life, with remainder in fee to his daughter, Maria M. Earl, now Mrs. Birks; that on the 4th of August, 1863, Earl died, leaving a last will and testament, by which he devised his entire estate, both real and personal, to his wife, for life, giving her full power to sell and convey the same, at her discretion, and limiting the remainder, in so much of the estate as should be undisposed of at the time of her decease, to his daughter, Mrs. Birks; that on the 25th of July, 1865, Adeline H. Earl, supposing herself, by virtue of her husband's will, to be the absolute owner of the entire premises, for the consideration of $6500, conveyed, by warranty deed, to George A. Beseman certain parts of these lots, including the same portions theretofore conveyed by her husband to Sanborn in trust for herself and daughter; that Beseman subsequently became insane, and Peter Schertz was appointed his conservator, who, in 1868, under an order of court, sold at public sale the premises last above mentioned, one portion of which was struck off to George Fredericks, at $3600, and the residue to Augusta Beseman, for the consideration of $4450; that in pursuance of their respective purchases the conservator conveyed to George Fredericks on the 22d of September, 1868, and to Augusta Beseman on the 15th of June, 1870; that on the 20th of June, 1870, Augusta Beseman, for the consideration of $2000, sold and conveyed to appellee Caroline Miller, a part of the same premises purchased by her of the conservator, as just stated, and being a part of the land now in controversy; that in consideration of $4000, George Fredericks, on the 17th of December, 1872, conveyed the part of the premises purchased by him to I. C. Edwards, who, for a like consideration, on the 27th of the month, conveyed the same to appellee Anna

Fredericks, being the residue of the premises in controversy; that on the 4th day of April, 1878, Birks and wife, for the consideration, as expressed in the conveyance, of one dollar, "and other considerations," by quitclaim deed, conveyed a part of the premises in controversy to appellant, Charles McCormick, and on the 9th of the same month, by a similar deed, for a like consideration, conveyed to him the residue; that on the 17th of July, 1878, McCormick, for the consideration, as expressed in the deed, of $7000, sold and quitclaimed the entire premises to John Hawkins, and took a deed of trust on the property conveyed to secure the purchase money, which was payable in three installments, the last maturing four years from the date of the transaction; that all the foregoing conveyances were duly recorded in the recorder's office of Peoria county, and the property in each of them is described by metes and bounds; that prior to the conveyances from Birks and wife to McCormick, he had intermarried with Augusta Beseman, Beseman having in the meantime died.

So far there is no controversy about the facts; but it is claimed by appellees that while they all supposed that Mrs. Miller and Mrs. Fredericks had acquired, through *mesne* conveyances from Adeline H. Earl, absolute fee simple titles to their respective premises, they had, in truth and in fact, only acquired her life estate, and that Charles McCormick, with full knowledge of the defect in the titles, and also of their ignorance of such defect, by means of fraudulent concealment and false and fraudulent representations, obtained the two quitclaim deeds above mentioned from Mrs. Birks and her husband, whereby he obtained from her the remainder in fee in the premises which she acquired by virtue of the trust deed from her father to Sanborn, in April, 1850, as heretofore stated.

There are other facts and interests involved in this suit which are settled by the decree, but it is not important to

note them here, as McCormick alone has' appealed. So far as he is concerned, the important inquiry is, were the convey-ances from Birks and wife to him obtained under such circumstances as will require a court of equity to set them aside as fraudulent and void.

While courts of equity do not sit to enforce mere moral rules, whose only sanction is found in public opinion, yet it is a part of their mission to see that common honesty, good faith and fair dealing shall be observed in the ordinary business affairs of life. Public and private interests alike demand this should be done. The circuit court, by its decree, finds this just and wholesome rule was not observed by appellant in obtaining conveyances of this property, and the question now to be determined is, does the evidence warrant that finding. The decree of the circuit court is, of itself, certainly entitled to some consideration by this court on a mere question of fact like this, without any special regard to the evidence which supports it. By this we mean, the finding of the lower court ought never to be disturbed upon a mere question of fact, without some good reason for doing so is clearly apparent. If, upon a careful consideration of the whole of the testimony bearing on the question, the reviewing court has a well founded doubt as to how the question should have been determined, without any clear conviction the one way or the other, the finding of the court below should not be disturbed.

Testing the case before us by this rule, it is difficult to perceive how it can reasonably be contended the present decree ought to be reversed on the facts. Whatever may be said with reference to other controverted questions of fact, we do not think it admits of a reasonable doubt, in the light of all the evidence in the case, that appellant, at the time of obtaining the conveyances in question, knew the fee of the property in controversy was in Mrs. Birks, and also knew, at the same time, that she and her husband were ignorant of·

that fact. This being so, the parties were not negotiating on equal terms. Appellant was deliberately withholding a fact within his knowledge, unknown to the other contracting parties, vitally affecting the proposed contract, which common honesty and fair dealing required him to disclose, and this of itself was such a fraud upon their rights as vitiates the whole transaction. And it is no sufficient answer to say the Sanford deed was on record, and appellees are presumed to have had notice of its contents; for this, at best, is but a presumption, which is not, in a case like this, at all conclusive on the parties, and the question therefore is, has this presumption been overcome by rebutting testimony. That it has, we have not the slightest doubt.

If this were a controversy between appellees and an innocent purchaser from appellant, the record in such case would be conclusive upon appellees; but such is not the case. If any consideration had been paid by appellant for the valuable estate conveyed to him by Birks and wife, the amount, doubtless, would have been stated in the deeds. This is the usual course in such transactions, and there are a number of good reasons for it, which we will not stop to enumerate. The very statement in these deeds with respect to the consideration, when tested by common experience in matters of this kind, affords the strongest evidence they were executed without consideration, and this is in perfect accord with the account given by Stephens and Birks of the affair. It is evident, from their testimony, these deeds were executed through mere kindness to McCormick, to enable him to make a loan on property in which neither Mrs. Birks nor her husband supposed they had the slightest interest—to satisfy a mere whim of the lender, as they were told. From their testimony, and all the circumstances in the case, we are fully satisfied the only inducement or consideration for the conveyances was a desire on the part of Birks and his wife to do McCormick a kindness, and to now permit him to take

advantage of it in the manner he proposes, would be the grossest injustice.

The claim of appellant that the consideration for these deeds was an undertaking on his part (which has subsequently been performed) to pay off a couple of his wife's notes, for $731.48 each, given by her to Mrs. Earl, and then in the hands of Birks, is, in our judgment, an afterthought, and pure fabrication. The thing is so unreasonable, in the light of admitted facts, that no unbiased mind can believe it for a moment. These notes were well secured by deed of trust, and their payment could have been promptly enforced whenever the holder desired. Moreover, the circumstances show that McCormick, at the time, was a man of limited means, and without any commercial standing; and yet he and his counsel would have it believed that Mrs. Birks and her husband, in the face of these facts, with a full knowledge of their rights, agreed to convey the fee simple title to the whole of the valuable property covered by the Sanford deed, without any consideration other than his naked promise, unsecured in any manner, to pay these notes at some future day, without even any definite time being fixed for such payment. The very statement is so opposed to all business experience, as to stamp it as totally unworthy of belief. The subsequent conduct of McCormick also shows this claim to be, as already stated, an afterthought, and pure fabrication. When these notes were taken up by him as they were, it is conceded he made no such claim at that time, and it was not, according to his own testimony, until some six years after the last payment to them he called on Mr. and Mrs. Birks for a deed. But this is not all. After having taken up these notes for his wife, he charged the amount up to her, and took a deed of trust on her property to secure the claim. Now, if, as he claims, he was to be paid by Birks and wife by a conveyance of her interest in the property in question, it was certainly dishonest and indefensible in him to charge the

amount of these notes up to his wife, unless he intended her to have the land, which he clearly did not, otherwise the conveyances from Birks. and wife would have been taken in his wife's name, and not his own, as they were.   Moreover, his own testimony shows the purchase was not intended for her benefit, but, on the contrary, he was trying to obtain an advantage over her, as well as Birks and wife.

The unreasonableness of McCormick's account of this affair is fully shown when viewed from another aspect.   He testifies, in substance, that he had no knowledge of the character or extent of Mrs. Birks' interest in this property at the time the alleged contract was entered into.   This is simply a startling proposition, if in truth any such contract was ever made.   Can it be possible that any sane man would undertake to pay off two notes, amounting in the aggregate to $1500, for an interest in a piece of real estate, without knowing anything with reference to the extent or character of such interest?   The statement is so positively at variance with all business experience as to furnish its own refutation, and we can not, therefore, accept it as true.   In any view we are able to take of the matter, we are fully satisfied that the account given by McCormick of the circumstances attending the execution of the conveyances by Birks and wife to himself is untrue.

This being so, the whole defence must necessarily fail, and it is therefore unnecessary to consider other questions discussed by counsel.

*Decree affirmed.*