NATHAN GREENSFELDER, Trustee,

*v.*

MARY A. CORBETT *et al.*

*Opinion filed June 19, 1901.*

1. DEBTOR AND CREDITOR—*chancellor's finding as to ownership of property should not be lightly disturbed.* On appeal from a decree determining the ownership of goods claimed to have been colorably transferred by an insolvent, the chancellor's finding upon mere questions of fact should not be disturbed, if, upon consideration of the whole testimony, the reviewing court, though having well founded doubt as to how the question should be determined, has no clear conviction the one way or the other.

2. The court reviews the evidence in this case, and holds it sufficient to sustain the decree directing the defendants to turn over a stock of goods to the complainant, as trustee in bankruptcy, upon the ground that it was the property of the bankrupt and subject to the claims of his creditors.

*Corbett* v. *Greensfelder,* 92 Ill. App. 491, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

ROSENTHAL, KURZ & HIRSCHL, for plaintiff in error.

ROBLIN & SICKLESTEEL, for defendants in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

One John Corbett, a retail dealer in general merchandise in the city of Chicago, filed a voluntary petition in the United States Court for the Northern District of Illinois to obtain the benefit of the Bankruptcy law, and the plaintiff in error, Nathan Greensfelder, was appointed trustee of the estate of the said bankrupt. The trustee, under a bill in chancery which he filed in the superior court of Cook county against the defendant in error Mary A. Corbett, (wife of the said bankrupt,) and the John Corbett Company, a corporation organized under and by

virtue of the laws of the State of Illinois, was granted a decree to the effect that a stock of merchandise now claimed by said Mary A. Corbett or said the John Corbett Company was in fact, and by right ought to be, the property of the said Greensfelder in his capacity as trustee, and directed the same be delivered to the said trustee, to be administered by him for the benefit of the creditors of the said John Corbett. The Appellate Court for the First District, on appeal, reversed the decree, and the trustee has sued out this writ of error to reverse the judgment of the Appellate Court.

There is practically but one question in this record,— and that a question of fact,—whether, as against his creditors, the merchandise in question should be regarded as the property of John Corbett, and the other alleged ownership thereof by either the John Corbett Company or by Mary A. Corbett held to be but fraudulent and collusive. At the threshold of the investigation it is well to consider the observations of this court in *McCormick* v. *Miller*, 102 Ill. 208, as follows (p. 214): "The decree of the circuit court is, of itself, certainly entitled to some consideration by this court on a mere question of fact like this, without any special regard to the evidence which supports it. By this we mean, the finding of the lower court ought never to be disturbed, upon a mere question of fact, without some good reason for doing so is clearly apparent. If, upon a careful consideration of the whole of the testimony bearing on the question, the reviewing court has a well founded doubt as to how the question should have been determined, without any clear conviction the one way or the other, the finding of the court below should not be disturbed."

On December 31, 1898, said John Corbett filed his voluntary petition to be declared a bankrupt. It appeared that in July, 1898, the said bankrupt was the owner of a stock of general merchandise, of the value, as estimated by him, of $7000, which he was engaged in selling at

retail at 673 and 675 Grand avenue, Chicago; that he applied to one Julius Guettel on the morning of the 16th day of July, 1898, to buy the stock of merchandise; that Guettel came to Corbett's place of business on the afternoon of that day and then saw the stock for the first time; that after a hasty examination, and without having taken an invoice, it was agreed that the stock should be transferred to him for the consideration of $3217.50; that Corbett valued the stock at $7000 and that Guettel's purchase was on the basis of forty-five per cent of Corbett's valuation; that Guettel paid to Corbett the said sum of $3217.50 and entered into possession of the stock and conducted the business of selling it at retail, at the same stand in the same rooms occupied by Corbett, until the 7th day of September of the same year,—a period of fifty-three days,—when he delivered the stock of merchandise to Mary A. Corbett, the wife of said John Corbett, the bankrupt. It appeared the stock of merchandise when the bill was filed was in the same business rooms which John Corbett had occupied before the transfer to Guettel, and that John Corbett was engaged in selling them at retail at his old stand, the same as before the alleged sale to Guettel.

Mrs. Corbett testified as follows with reference to the transaction between herself and Guettel:

Q. "What are the facts with reference to it?—(the purchase from Guettel.)

A. "I bought the stock off of Mr. Guettel September 7.

Q. "What year?

A. "Of 1898.

Q. "How much did you give him for it?

A. "I didn't give him anything for it—he gave me time on it.

Q. "How do you mean?

A. "He told me I could pay it when I got around to it. He sold me goods for twenty years, and he knew I was practically thrown on my own resources, and he gave

me the stock in consideration of $2700, to pay when I get ready to pay it.

Q. "Any written agreement between you and him?

A. "No, sir.

Q. "Any bill of sale?

A. "Yes, sir.

Q. "Got the bill of sale with you?

A. "No, sir; I forgot it.   I would have brought it but I forgot it.

Q. "Will you bring it down?

A. "Yes, sir.                .

Q. "Any other writing between you and Mr. Guettel?

A. "No, sir.

Q. "Any notes?

A. "No, sir.

Q. "Give him anything at all to show for his money?

A. "No, sir; he didn't ask anything of me.        .

Q. "Have you made him any payment since?

A. "No payment at all—not a dollar."

Later in the same examination she said it was either $2700 or $2800 that she was to pay for the goods.

Guettel testified he sold the goods to Mary A. Corbett, the wife of said John Corbett, for $2800; that she paid him $300 in money; that for the remainder ($2500) he did not take any note or other evidence of indebtedness, and it was disclosed in his testimony there was no agreement when such remainder should fall due or be paid, or that it should bear any interest, or that there was any definite understanding or arrangement for its payment.   After Guettel had been heard to testify Mrs. Corbett was recalled in her own behalf, and testified as follows:

Q. "Do you remember, Mrs. Corbett, what you agreed to pay Mr. Guettel for that stock which you purchased from him in September, 1898?

A. "$2800.

Q. "What, if anything, have you paid him on it?

A. "$300.

Q. "And you now owe him $2500?

A. "Yes, sir; I owe him $2500.

Q. "The last time you were examined you stated that you bought the stock at $2700 and that you had paid him nothing on it.

A. "Well, it was $2800.

Q. "You wish to correct that statement now?

A. "Yes; I wish to correct that statement. I couldn't just re-call the bill of sale."

It was proven that John Corbett put $2000 of the money he received from Guettel into the hands of Mrs. Corbett, his wife, soon after the alleged sale of the stock of merchandise to Guettel. She paid perhaps $1300 of this money to certain of her husband's creditors and kept the remainder. We think the chancellor was justified in believing that if $300 was paid by her to Guettel in the transaction by which she received possession of the stock of merchandise from Guettel, the money so paid was that of her husband.

Mrs. Corbett further testified she transferred the stock of merchandise to a corporation called "the John Corbett Company," which one William R. Heron, her brother-in-law, had incorporated at her request; that the John Corbett Company paid her nothing for the merchandise, and that she owned all the stock in the corporation. William R. Heron testified that he caused the John Corbett Company to be incorporated; that he subscribed for forty-eight shares of the capital stock but paid nothing for it; that he still held his shares of stock and was elected president of the company, and Mrs. Corbett was secretary and treasurer; that his occupation was that of collector for a "chattel mortgage concern," and that he had not changed his occupation since the formation of the John Corbett Company; that since the day the incorporation of the company was completed he had not attended any meeting of the board of directors of the company, etc.; that the company got the stock of merchandise from

Mrs. Corbett, and that she had all the books and papers belonging to the company. It was proven said John Corbett was engaged in selling the stock of merchandise in question at retail, and he testified he was doing so as a clerk in the employ of the John Corbett Company. With reference to the relation of the corporation to the stock of merchandise Mrs. Corbett testified as follows:

Q. "Now, in September, Guettel deeded this property back to you,—that is, by bill of sale?

A. "Yes, sir.

Q. "And you sold it to the Corbett Company?

A. "No, sir; I wasn't in position to incorporate. I didn't have the time, and I asked this Mr. Heron to incorporate for me, and he did.

Q. "And that is all he had to do with it—simply to go through the forms?

A. "That's all; go through the forms,—incorporated for me.

Q. "So the Corbett Company gave you nothing for this merchandise at any time?

A. "No."

There was some testimony given by Mrs. Corbett to which we have not referred, relative to an alleged arrangement between her and her husband, John Corbett, by which, as she claimed, she was authorized by her husband in former years to claim the money received from the sales of empty boxes and any excess remaining of a weekly allowance given her by the husband for the support of the family, and that from these sources she accumulated sums of money, from time to time, which she testified she had given back into her husband's hands and he had applied such sums of money to his own uses and purposes. The purpose sought to be accomplished by this proof seems to have been to account, in part, for the $2000 in money paid by the husband to the wife, and as a basis for the claim the $300 paid to Guettel should be regarded as the money of the wife, having been, as

she claimed, retained by her out of said $2000 given her by her husband as in part payment of the savings from the family allowance, sales of empty boxes, etc., given her by the husband and returned or loaned to him by the wife.

That the John Corbett Company had no just right to retain this stock of goods is beyond question. There was no such real incorporation. It had no capital and had paid nothing for the goods. It has a mere colorable existence, and the claim the goods belonged to it was also but colorable and fraudulent. The chancellor was, we think, fully, justified in refusing to regard Mrs. Corbett to be, as between her and her husband's creditors, the true owner of the merchandise. If Mrs. Corbett paid anything on her alleged purchase of the goods, the court was well warranted in regarding the money so paid as being the money of the husband. The testimony with relation to her liability to make further payments on the purchase of the stock from Guettel casts grave doubts on her assertion that she was the real purchaser. The attempt on the part of Mrs. Corbett to claim the money which her husband had placed in her possession in July, 1898, or the portion thereof which she paid to Guettel, (if she made such payment to Guettel,) as being due to her from him in payment of sums which she alleged she had in former years received as savings out of the money paid her by her husband to defray family expenses and from sales of empty boxes belonging to the husband, and afterwards loaned to him, did not, it seems, impress the chancellor as entitled to any consideration. We are by no means prepared to assert the chancellor fell into error on that point. The stock of merchandise is practically the same stock that John Corbett owned on the 16th day of July, 1898, and it was proven he was engaged in disposing of it in the same room and practically as he was before it was alleged he sold and disposed of it. His possession of the goods is too thinly veiled by the claim

such possession by him was in the capacity of a salesman for the fictitious John Corbett Company, to gain credence.

Our conclusion is, that in view of the whole testimony the finding of the chancellor that the stock of merchandise in question should be delivered to the plaintiff in error, Greensfelder, as trustee in bankruptcy of the estate in bankruptcy of said John Corbett, as being the property of the bankrupt, to be administered by said trustee under the Bankruptcy act for the benefit of the creditors of the said John Corbett, ought to have been accepted by the Appellate Court and the decree affirmed.

The judgment of the Appellate Court is reversed and the decree of the superior court is affirmed.

*Judgment reversed.*