WILLIAM H. HIGGINS

*v.*

ALBERT WISNER.

*Opinion filed November 8, 1897—Rehearing denied December 14, 1897.*

APPEALS AND ERRORS—*error of chancellor as to matters of fact must be clear to warrant reversal.* Errors of the chancellor as to findings of fact upon conflicting evidence must be clear and palpable to authorize a reversal.

APPEAL from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

S. K. DOW, and JOSIAH BURNHAM, for appellant.

JONES & STRONG, F. B. DYCHE, and JAMES E. MUNROE, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery by the appellant, alleging that he was the owner in fee of the west half of lot 8 and all of lots 9 and 10, in Yerby's subdivision of parts of the north-west and of the north-east quarters of section 15, township 30, north, range 14, east, in Cook county, and had possession thereof, and that the appellee pretended to have some interest in the property, and had brought an action of forcible entry and detainer against certain tenants of appellant who were in possession as his tenants, and praying that further prosecution of said forcible entry and detainer suit should be enjoined, and that upon a final hearing a decree should be entered declaring, establishing and quieting his title. Decree was rendered adversely to the appellant, finding that the appellee was the owner of the title to the property in controversy and entitled to possession thereof, and decreeing that the temporary injunction should be dissolved and that the parties in possession of the property should deliver up

the possession to the appellee.    This is an appeal from such decree.

It clearly appears,—indeed, practically without dispute,—that appellee is the owner and holder of the government or record title to the property.    The principal contention of the appellant is, that he is the owner of the property in question because, as he alleges, it appeared the actual, open, exclusive and adverse possession of it has been held by himself and his grantees under claim of title in fee for more than twenty years prior to the filing of the bill.    The bill was filed on the 30th of April, 1888.

The claim of appellant to such possession had its inception in the alleged possession of one Daniel Robertson, beginning, as he asserted, in 1863, and continuing through other persons and himself, all holding in the same line, to the date of the institution of the suit.    One of these persons whose possession is included by appellant in his claim of possession was one William Kelly. The appellee claimed the said William Kelly was the tenant of Paul Cornell and George W. Gage, who, appellee further claims, and as it appears from the evidence, were then the owners of the fee of this property and who conveyed their interest to him.    Kelly entered into the possession of the property in the fall of 1873, and remained in possession until his death, in 1885, and his widow and children retained possession until the date of the filing of the bill herein.    The action of forcible detainer was brought against them by the appellee.

Whether the said Kelly held possession under Gage and Cornell, grantors of the appellee, or under one Reed, grantor of appellant, and afterwards under the appellant himself, was a frictional point of fact.    It appeared beyond dispute that Kelly bought a house of Cornell and moved it on the lots by the permission of Cornell; that it was a part of the contract for the purchase of the house that Kelly should be allowed by Cornell to move it upon the lots and there occupy it; but it appears that one Reed,

the grantor of the appellant, while Kelly was in the act of moving the house upon the lots, induced Kelly to acknowledge him as his landlord. Various admissions made by Kelly prior to his death were proven, some to the effect that he recognized one and some that he recognized the other of the parties as his landlord. There was much testimony *pro et con* upon that question, and its true solution depended largely upon the credibility which should be accorded to the different witnesses and the weight and value of their testimony.

It was also a much controverted question of fact whether the premises in dispute were in the actual, open and adverse possession of any one in the years 1863 to 1870, inclusive. On this point the testimony of one George W. Waite is very convincing. He testified he was village engineer and superintendent of public works for Hyde Park, and in the employ of the South Park Commissioners as civil engineer, and a member of a committee to examine real estate designed to be purchased by the commissioners, and that in the discharge of his duties in these several capacities he visited the lots to ascertain whether they were vacant; that he drove upon and over them and inspected them, and that they were not enclosed from 1863 to 1870, and he found nothing on them to indicate they were in the possession of any one, but that they were vacant during all that period of time, and that he so officially reported on more than one occasion. Other testimony strongly supported and corroborated this witness, and still other evidence tended to support the contention of the appellant that his grantors held possession during those years.

Appellant had color of title, but could not succeed under either section of the statute providing for the creation of title within seven years, for the reason he had not paid the taxes. The taxes were paid by the appellee, who held the title deducible of record from the government. It was therefore indispensable to appellant's

claim of title, based upon possession, it should appear from the preponderance of the evidence he, and those under whom he claimed to hold, had had actual, open, adverse and exclusive possession of the property for the period of twenty years. If the possession of Kelly was not the possession of appellant, he could not succeed. If the premises were vacant during the year 1868, 1869 or 1870 he could not establish twenty years' possession. Upon both of these propositions the most favorable view for the appellant is, the evidence was conflicting. The chancellor had facilities superior to ours for reaching a correct conclusion as to the weight of the testimony. He saw and heard the witnesses, and therefore had better opportunity than we have for forming a correct conclusion as to the credibility and weight of their testimony.

In *McCormick* v. *Miller*, 102 Ill. 208, we said (p. 214): "If, upon a careful consideration of the whole of the testimony bearing on the question, the reviewing court has a well founded doubt as to how the question should have been determined, without any clear conviction the one way or the other, the finding of the court below should not be disturbed."

In *Patterson* v. *Scott*, 142 Ill. 138, it was said (p. 141): "It was held in *Coari* v. *Olsen*, 91 Ill. 273, and the rule has been followed in numerous subsequent cases, that in a chancery cause so heard upon conflicting evidence, the error in the finding of the chancellor as to matter of fact must be clear and palpable before it will authorize a reversal, and for the reason that such chancellor has superior facilities for forming an opinion of the relative merit and weight of the testimony given by the several witnesses."

We cannot say the findings of the chancellor in the case at bar, upon the material questions of fact, were clearly and palpably wrong, but, upon the contrary, we think they were correct.

The decree must be and is affirmed.

*Decree affirmed.*