MAY S. OGDEN, Appellee, *vs.* ALBERT P. STEVENS, Appellant.

*Opinion filed October 26, 1909.*

1. LACHES—*laches must be set up in answer.* While the defense of *laches* may be raised by demurrer in certain cases, yet if the defendant answers the bill and fails to set up *laches* he will not be allowed to insist upon such defense on the hearing.

2. STATUTE OF FRAUDS—*a verbal agreement to extend time for redemption is valid.* A verbal agreement to extend the time for redemption from a judicial sale is valid and is not affected by the Statute of Frauds.

3. MORTGAGES—*equity will permit redemption where owner of equity of redemption has been misled.* A court of equity will permit redemption from a judicial sale where the owner of the equity has been misled by the course of conduct and representations of the purchaser and has been induced by such fraudulent representations or promises to refrain from redeeming until the time for redemption has expired.

4. SAME—*when equity will grant redemption.* A court of equity will grant redemption from a foreclosure sale where the evidence shows that the purchaser permitted the owner of the equity to make expenditures for taxes, improvements and in defending litigation, knowing that such expenditures were being made in reliance upon his promise to permit redemption after the statutory period had expired.

5. EQUITY—*court of equity will look to substance rather than form.* A court of equity will look to the substance rather than the form of a written instrument, and will seek to discover and carry into effect the real intention of the parties and enforce it according to the sense in which it was understood by the parties as shown by subsequent acts and conduct with reference thereto.

6. APPEALS AND ERRORS—*the chancellor's findings from oral testimony are not lightly set aside.* Where the chancellor has heard the testimony by the witnesses in open court, his findings upon disputed questions of fact will not be disturbed, on appeal, unless manifestly against the weight of the evidence.

7. INTEREST—*when interest should not be decreed.* The mere fact that the purchaser of property at a foreclosure sale, after the period for redemption has expired, refuses to concede the right of the owner of the equity of redemption to redeem and defends a

suit in equity to enforce such right, does not justify a provision of the decree that such purchaser shall account for interest on certain condemnation money for part of the premises, deposited with the county treasurer after the suit was begun.

APPEAL from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

COLL McNAUGHTON, and JOHN W. DOWNEY, for appellant.

EDDY, HALEY & WETTEN, (P. C. HALEY, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This was a bill filed by May S. Ogden in the circuit court of Will county against Albert P. Stevens and Jerome P. Stevens to obtain a decree permitting her to redeem certain premises from a sale made under a decree entered in said court on the 25th day of September, 1897. Albert P. Stevens answered the bill, denying the principal allegations upon which the complainant predicated her right to relief. Jerome P. Stevens filed an answer disclaiming all interest in the premises, and his connection with the litigation was terminated. Upon a hearing of the evidence in open court a decree was entered in accordance with the prayer of the bill, permitting the complainant to redeem lots 4, 5 and 8, in block 1, of school section addition to the city of Joliet, as prayed for in the bill, upon the payment of the balance which might be found due the defendant upon an accounting to be had before the master in chancery in accordance with the specific directions of the decree, and the cause was referred to the master in chancery to state the account between the complainant and defendant and to report his conclusions of law and fact in relation to the matters of accounting so referred to him. The defendant has appealed from this decree and urges a reversal thereof for the reasons hereinafter stated.

The facts disclosed by the evidence show that prior to September 6, 1884, the premises in question were owned by Marshall B. Ogden, who died testate on said date, and by his last will the premises involved were devised to his son, Edwy C. Ogden, husband of appellee. At the time of the death of Marshall B. Ogden there was a mortgage on said premises in favor of William C. Ogden for $1697.50. On July 15, 1892, Edwy C. Ogden executed a trust deed to William Grinton to secure a loan of $6000 obtained from Henry K. Stevens, father of the appellant, who thereafter made a gift of said note and trust deed to appellant. The $6000 note was payable to Edwy C. Ogden five years after date and was by him endorsed. The note drew interest at the rate of seven per cent per annum. On August 9, 1893, Edwy C. Ogden conveyed his equity in said property to M. D. Ogden. On August 17, 1896, the holder of the note elected to declare the principal sum due because of a default in the payment of interest and filed a bill in the circuit court of Will county to foreclose the same. In December, 1896, while the foreclosure proceeding was pending, Edwy C. Ogden intermarried with the appellee, May S. Ogden, and on June 15, 1897, M. D. Ogden, for the consideration of $2300, conveyed his equity in said lots to appellee, May S. Ogden. The foreclosure proceeding resulted in a decree on September 25, 1897, for the sum of $7621.79. The decree not having been satisfied, the premises were sold on the 25th of October, 1897, to appellant for $7795.99, in full satisfaction of the decree, and the master in chancery executed to appellant a certificate of purchase entitling him to a deed on January 25, 1899, unless redemption should be made. William C. Ogden, who claimed to be the owner of the note for $1697.50, secured by a mortgage upon a part of these premises, was not made a party to the foreclosure of the trust deed. On January 5, 1897, and during the pendency of the foreclosure proceeding, William C. Ogden filed an original bill in the Will county circuit court to foreclose

his mortgage. Appellant and Edwy C. Ogden and others were made parties defendant to the bill filed by William C. Ogden. Appellee was not made a party to this bill. The William C. Ogden bill was dismissed by the circuit court of Will county for want of equity on April 22, 1898, which was about six months after the sale under the foreclosure of the trust deed. William C. Ogden appealed from the decree dismissing his bill to the Appellate Court, where the decree was affirmed December 14, 1898, before the time for redemption had expired from the sale under the decree of foreclosure of the trust deed. William C. Ogden prosecuted a further appeal to this court, and the judgment of the Appellate Court was affirmed by the Supreme Court on June 17, 1899. A petition for rehearing was filed by William C. Ogden and was not finally disposed of until October 5, 1899, which was several months after the expiration of the time allowed by the law for a redemption from the trust deed foreclosure sale. Both appellant and appellee were interested in defeating the foreclosure proceeding instituted by William C. Ogden. The evidence shows that appellee employed and paid counsel to defend against that foreclosure proceeding and that the defense was successfully interposed without any cost to appellant.

The foregoing facts are undisputed. The controversy between the parties relates entirely to facts now to be stated.

Appellee contends that she intended to redeem from the sale under the trust deed; that she had frequent conversations with appellant in regard to the redemption of the premises, and that the appellant assured her that all he wanted was the money that he had invested and the interest thereon, and that appellant frequently promised to accept his money and permit a redemption, both before and after the master's deed was issued to appellant. Appellant denies ever having made any such promises to appellee.

On February 1, 1899, Morrill Sprague, an attorney at the Will county bar, who had represented the defense in

the William C. Ogden litigation, at the request of appellee's husband and appellant made an itemized statement of the amount necessary to redeem from the trust deed foreclosure, from which it appears that at that time there was due for principal, interest, insurance, taxes and costs, $8974.18. At that time it was estimated by Mr. Sprague that it would probably be nine months before the William C. Ogden litigation would be finally disposed of. For the purpose of preserving appellee's right to redeem after the termination of the William C. Ogden litigation, on the said first day of February, 1899, two instruments in writing were prepared by Mr. Sprague and executed between appellant and appellee. One of these instruments on its face purports to be a contract of sale, by which the appellant agreed to sell the premises to appellee for the sum of $8974.18, provided said sum of money, with six per cent interest thereon, was paid to him at any time within nine months from that date. The contract also provided that appellee should pay appellant as rentals on the premises $100 per month, in advance, for a term of nine months, with the understanding that if appellee paid the $8974.18 within the time limit she should have credit for the amount paid as rentals. The other instrument executed between the parties was an ordinary lease, by which appellant leased the premises to appellee for a rental of $100 per month. The evidence shows that appellee continued in the possession of the premises and paid the $100 per month for eight consecutive months, and that before the ninth payment came due appellant went to Mount Clemens, Michigan, for treatment for rheumatism, and that he was not at home to receive the $100 or the balance of the money under the contract, although appellee, her husband and her attorney made repeated efforts to make such payment and close up the transaction. On one occasion after appellant returned home appellee was denied admittance to his home on the ground that appellant was too ill to be seen about business affairs. Finally, in November,

after the nine months had expired, appellant had an interview with Mr. Sprague and the appellee's husband, and he again assured them that he was willing to carry out the contract and receive his money although the time under the written agreement had expired, and on this occasion appellant received a certified check for the ninth $100 payment.

The evidence shows that the equity in these premises was worth from $10,000 to $20,000, and that appellee had made a tentative arrangement with Mr. O'Connor, a broker, to furnish her the necessary money to make a redemption of the property. Appellee's husband had also obtained a promise from another loan agent who was willing to furnish the money for the redemption and take a mortgage upon the property. Appellee informed appellant that she had such arrangements made for the money and was ready and willing at any time to pay him all that was due him, but appellant told her that there was no hurry about the redemption; that he did not need the money, and that she might just as well pay him interest as to pay it to some other person. The weight of the evidence shows that on all of these occasions appellant recognized his obligation to take the money and release the property. During the time that appellee was occupying the premises, and while relying on appellant's promise to accept his money, appellee spent about $2500 in taxes, expenses and improvements upon the premises. No payments were made and none were demanded from November, 1899, until March, 1900. On the latter date appellant called on appellee and presented a written lease for the premises and requested her to sign it. Appellee declined to sign the lease, and told appellant that she wanted him to take his money and release the property. Appellant replied that he did not want his money at that time and that there was no need of going to the trouble just then; that he thought he would reduce the rent to $50 a month, and that it would not make any difference about their arrangement as to the redemption, and with

241—36

this understanding appellee signed the lease, agreeing to pay $50 per month as rent. During the succeeding summer appellant called at the store of appellee's husband frequently, and on these several occasions appellee insisted upon a settlement and appellant's accepting what was due him and releasing the property to her, but appellant, while not refusing to comply outright, was always ready with some excuse for not settling it then. In November of that year appellant came to the drug store kept by appellee's husband, and appellee having become suspicious that appellant did not intend to carry out his promise, presented him with a large amount of money, purporting to be the amount due him, and demanded that he release his claim upon the property. Then for the first time appellant flatly refused, stating that he preferred the property to the money. An altercation thereupon occurred between appellant and appellee's husband, in which offensive language was used. This was the last friendly interview between the parties. Within a short time thereafter Jerome P. Stevens, a brother of appellant, notified appellee that he had bought the property and that he wanted possession. Written notices to quit were served and legal proceedings threatened, until finally appellee surrendered the possession to Jerome P. Stevens. Afterwards Jerome P. Stevens let the property go back to appellant, and, as already stated, disclaims all interest therein at this time.

After the commencement of this suit the Chicago, Rock Island and Pacific Railway Company obtained a right of way over a portion of two of the lots involved, and has, pursuant to the order of the county court, deposited $12,-500 with the county treasurer of Will county, which remains on deposit there, representing the land condemned by the railroad company, the title to which will abide the decision of this case.

The original bill was filed in this case on January 21, 1905. Appellant contends that appellee has been guilty of *laches* in commencing this suit. The city of Joliet passed

an ordinance requiring railroads to elevate their tracks. In
order to comply with this ordinance the Chicago and Rock
Island company re-located a portion of its line across two
of the lots involved, which, it is claimed, greatly enhanced
the value of the property. Appellant contends that the fil-
ing of the bill in this case is an afterthought, due to the
unusual advance in the value of the property. It is suffi-
cient to reply to this contention that appellant does not set
up the defense of *laches* in his answer, and the rule has
been frequently announced by this court that the defense of
*laches,* to be availed of, must be set up by plea or answer,
so as to afford complainant an opportunity to amend the
bill by inserting allegations accounting for the delay. (*Cor-
yell* v. *Klehm,* 157 Ill. 462; *Spalding* v. *Macomb and West-
ern Illinois Railway Co.* 225 id. 585; *Schnell* v. *City of
Rock Island,* 232 id. 89.) There are cases where the ques-
tion may be raised by demurrer. (*Kerfoot* v. *Billings,* 160
Ill. 563.) But where a defendant answers a bill and fails
to set up *laches* he will not be allowed to insist upon such
defense on the hearing.

It is next contended by appellant that his several prom-
ises relied on by appellee were void under the provision of
the Statute of Frauds, which is set up and relied on in his
answer. This position is untenable. A verbal agreement
to extend the time for redemption from a judicial sale is
valid and not affected by the Statute of Frauds. (*Reigard*
v. *McNeil,* 38 Ill. 400; *Pensoneau* v. *Pulliam,* 47 id. 58;
*Union Mutual Life Ins. Co.* v. *White,* 106 id. 67; *Taggart*
v. *Blair,* 215 id. 339.) A parol contract to extend the
period of time allowed for a redemption from the judicial
sales has been upheld and enforced by this court in a num-
ber of cases. (*Schoonhoven* v. *Pratt,* 25 Ill. 379; *Nichols*
v. *Otto,* 132 id. 91; *Union Mutual Life Ins. Co.* v. *Kirch-
off,* 133 id. 368.) Courts of equity, in the exercise of their
jurisdiction, have gone even further than the enforcement
of clearly proven verbal contracts for the extension of a

period of redemption, and have granted relief where the purchaser has by a course of conduct induced the owner to refrain from redeeming within the statutory time by fraudulent representations or promises to the purchaser which could not be said to constitute a contract. (*Henderson* v. *Harness,* 184 Ill. 520.) Where the owner of the equity has been induced to rely upon the representations of the creditor until the period of redemption has expired, a court of equity will grant relief. (*Taggart* v. *Blair, supra.*) The defense that the alleged contract is void under the Statute of Frauds cannot be sustained.

Appellant's most serious contention is that the decree is not supported by the evidence. The weight of the evidence supports the facts set out in this opinion. Appellee is corroborated by several witnesses as to the promises of appellant that he would accept the money due and release these premises. That such was the understanding is shown by the evidence of Mr. Sprague, who at the request of the parties prepared a statement showing the exact amount necessary to redeem these premises on February 1, 1899, the day that the written contracts were made. Mr. Sprague testifies that the parties entered into those contracts for the purpose of preserving appellee's equities and extending her right to redeem until the litigation concerning the William C. Ogden mortgage was determined; that the parties had no other object in view in executing the lease and the so-called sale contract. That appellee understood that she had a continuing right to redeem is shown by the expenditure of money for taxes, improvements and in defense of litigation concerning the property. It would not be reasonable that an intelligent person would thus spend large sums of money upon property which belonged to another. Appellant was cognizant of these expenditures, and he knew appellee was relying upon his promises in making them. Under these circumstances it would be a fraud upon appellee to thus induce her to expend money in the belief that

she had a right to redeem and then refuse to receive the money and release the property. Under the evidence disclosed in this record appellee's right to redeem might well be rested upon the doctrine of estoppel.

Appellant insists that by the strict letter of the written contract appellee only had an option to purchase the property within nine months, which she did not exercise, and that thereafter she had no further rights in the premises. Conceding that the written instruments executed on February 1, 1899, are susceptible of the construction contended for by appellant, still courts of equity look to the substance rather than to the form of written instruments, and will seek to discover and carry into effect the real intention of the parties and enforce it according to the sense in which it was understood by the parties, as shown by their subsequent acts and conduct with reference thereto. (Pomeroy's Eq. Jur. sec. 378.) The question now under consideration being one of disputed fact, the finding of the trial judge to whom the cause was submitted for trial is entitled to great weight with this court. The witnesses were before the chancellor and he had opportunities for observing their demeanor while testifying which we do not have. In such case the rule is that the finding of the trial court will not be set aside unless it is manifestly against the weight of the evidence. (*Higgins* v. *Wisner,* 170 Ill. 220.) We are not, however, required to invoke this rule in the case at bar. If the question were pending as an original proposition in this court we could not reach any other conclusion than that the weight of the evidence supports the allegations of appellee's bill. We are entirely satisfied with the result reached in the court below, but are of the opinion that the court erred in reference to the matter of interest in one respect. The court directed that appellant be required to pay interest at the rate of six per cent on the $12,500 deposited by the railroad company with the county treasurer. To require the appellant to pay interest on this sum of money is

to inflict upon him a penalty for defending this lawsuit. While it is true that appellee is entitled to this money and would have received it when it was paid over had appellant then conceded appellee's claim and released all right to the property, still we do not think appellant should be mulcted in damages beyond the ordinary court costs, merely because he has sought to have his rights litigated. The decree of the circuit court will be reversed in this respect, so that the master, in stating the account, will not charge appellant with interest on the $12,500. In all other respects the decree of the circuit court will be affirmed.

*Decree reversed in part and cause remanded.*