Elizabeth Wright and Charles C. Wright, Appellants, v. William S. Logan, Appellee.

Gen. No. 9,027.

482

filed January 15, 1937.

STEELY, STEELY, GRAHAM & DYSERT, of Danville, for appellants; WALTER V. DYSERT, of counsel.

VAN SELLAR & McCLAIN, of Paris, for appellee.

Mr. Justice Riess delivered the opinion of the court.

This is an appeal by Elizabeth Wright and Charles C. Wright, from a decree entered in the circuit court of Edgar county, dismissing their complaint in equity, under which they sought to redeem real estate from a mortgage foreclosure sale.

The appellants herein, plaintiffs below, in their amended complaint, alleged in substance that they were the owners and in possession of a 40-acre farm in Edgar county, Illinois, and that the defendant is the holder of a master's certificate of sale thereto, under a decree of foreclosure, which certificate is dated February 3, 1933.

They further allege that the defendant agreed with the plaintiffs, both before and after the 12 months' statutory redemption period, that at any time thereafter, if the plaintiffs would pay the defendant all they owed him, he would transfer and assign said certificate or make and deliver his deed, as the case might be, conveying the premises described in said certificate of purchase to the plaintiff, Elizabeth Wright, or to her daughter Helen, or to any other person whom Elizabeth Wright might designate; that plaintiffs relied on said agreements and by reason thereof, thereafter made valuable improvements on said premises with the knowledge of the defendant; and so expended upward of $500; that the amount of the indebtedness of the plaintiffs to the defendant was unknown to them, and that the defendant refused their request for a statement of the amount of said indebtedness.

It was further specifically alleged that the defendant, on or about April 8, 1933, at his office in Paris, Illinois, told the plaintiff, Elizabeth Wright, and her daughter, Helen, that plaintiffs could redeem said farm on which defendant held said master's certificate of purchase any time they could get the money; that on or about November, 1933, and January 1, 1934, said

defendant verbally agreed with the plaintiff, Elizabeth Wright, that at any time they could get the money and pay the defendant what they owed him they could redeem, either before or after the period of redemption, and if the period of redemption had expired, the defendant would deed said property to plaintiff's daughter, Helen, or any one else whom they might suggest, and that if plaintiffs would let him take title to said farm, they might redeem after the expiration of 15 months, if they obtained the money to pay him; that the amount of $597.16 was expended by the plaintiffs on said premises during the period of redemption.

That the plaintiffs procured the approval of two different loans on said farm, one for $4,000, and the other for $1,000, and it is their belief, according to the best of their knowledge and information, that they owe the defendant $4,089.65, and that before bringing this suit, the plaintiffs were ready, able and willing and offered to pay the defendant whatever they owed him; that the plaintiffs offered to bring into court, and are willing to pay the defendant whatever sum the court may find the plaintiffs to be indebted to said defendant, and are ready, able and willing and offer to pay the same, but because of the refusal of the defendant to agree with the plaintiffs as to the amount of said indebtedness, they were never able to pay him, and by reason thereof said 12-month period allowed for redemption expired, and that then said defendant repudiated said agreement, and refused and declined to comply with the same.

Plaintiff further alleged that the defendant through his conduct and agreements is now in equity, and in good conscience, prevented and estopped from repudiating his said agreement to permit the plaintiffs to redeem said premises within a reasonable time to be fixed by the court.

The plaintiffs ask the court to determine the amount of indebtedness due the defendant, and to fix a reasonable time within which the plaintiffs may comply with the decree of the court by paying the said defendant the total amount of such indebtedness.

The defendant filed his answer, denying that the plaintiff is the owner of the real estate described in the petition, and states that William S. Logan, the defendant, is now the owner thereof.

The defendant therein denies practically all the allegations in the plaintiff's complaint, and denies that the plaintiffs ever offered or were able to pay him the amount of said indebtedness.

The defendant, upon leave of court, filed several additional paragraphs to his answer in which he alleges that the plaintiffs, without any notice to the defendant, and without having offered to pay the defendant any amount on May 3, 1934, filed a petition in bankruptcy, in the United States District Court of the Eastern District of Illinois, asking for a composition and extension of time for rehabilitation of the plaintiffs, within which to pay all creditors; that without notice, the plaintiffs obtained an order from said court, restraining the master in chancery from issuing a deed in said foreclosure proceedings, and also restraining the defendant from taking any steps to obtain said deed, or to obtain possession of said real estate.

That upon a hearing of said petition before the referee in bankruptcy, a finding was made by the referee against the plaintiffs, dissolving said restraining order; that thereupon the referee in bankruptcy referred his finding to the United States District Court for the Eastern District of Illinois, and after a hearing thereon, the report of the referee was confirmed and adopted by the court on the 15th day of August, 1934.

That thereupon the plaintiffs perfected an appeal to the United States Circuit Court of Appeals for the

Seventh District; that in said proceeding, plaintiffs filed a brief, and devoted a number of pages in their argument to the question whether or not an oral agreement for extension of time for redemption existed between the plaintiffs and the defendant; that afterward, on the 22nd day of February, 1935, an opinion was filed in said Court of Appeals, finding against the plaintiffs which said opinion also confirmed the report of the referee of the District Court.

That thereupon on the 5th day of April, 1934, appellants, plaintiffs herein, filed a petition in said Federal District Court for a transfer of said bankruptcy proceeding, under section 75 of the Bankruptcy Act; that in accordance with said petition the cause was referred to a conciliation commissioner for a hearing; that a motion was filed by the appellee, defendant herein, asking that said cause be dismissed as to said defendant, and that the restraining order heretofore issued by the said federal court, restraining the master in chancery of Edgar county from issuing a deed under the foreclosure decree, be dissolved and set aside, and that an order was entered on the 11th day of June, 1935, dissolving and setting aside said restraining order. Plaintiffs thereupon prayed an appeal from said order, which appeal was never perfected; that a counterclaim for $500 was filed by the defendant in the circuit court, which was disallowed by said court and no cross errors were assigned thereon; hence the same is not before this court.

There are but two questions involved in this case: First, did the appellee enter into a binding agreement with the appellant by which he agreed to extend the time for redemption from foreclosure sale held on February 3, 1933? Second, does the doctrine of *res adjudicata* apply in this case, whereby the plaintiffs are bound by the judgment of the federal court, purporting to find that there was no oral agreement between the

defendant appellee and the plaintiffs appellants herein for an extension of the time of redemption from the mortgage sale on February 3, 1933?

Mrs. Elizabeth Wright, one of the plaintiffs, testified that subsequent to the sale of the real estate in question, she talked to the defendant, Logan, at his office in Paris, Illinois, on or about the 21st day of April, 1933; that she then rented the farm in question for $300 per annum, payable in cash. She further testified that she then inquired as to the total amount of indebtedness due defendant; that she talked to the defendant at his office in regard to the redemption of the farm at the foreclosure sale, and that he told her that she might redeem her land any time she procured the money and paid him all she owed him. She told him she was arranging for a loan and that she expected to pay him.

She testified that she again saw him in November, 1933, and asked him to refinance her, and that he told her he would not do that, but he would let her take title to the land, and that he would, even after the period of redemption had expired, let her redeem the land; that she again saw him about the first day of January, 1934, and that he told her she might redeem, even after the time had expired, and that she might have her land back, even after the 12 months or the 15 months had expired, if she secured the money, and paid all she owed him; that if he should die in the meantime, he would tell his son, Ben, and his secretary that the lands were to be deeded to her, provided she secured the money, even though the 15 months had expired; that on April 28, 1934, she again saw him, and talked to him. The 15 months' time had almost expired, and she asked him "to enter into writing" with her to grant this extension of time. He told her he would not give her any instrument of writing, but that she might redeem, and that his word was as good as a bond. She further testified that she had expended the sum of $597, in

making improvements on the farm during the period of redemption, which sum was expended in painting buildings, building fences, setting out fruit trees and shrubbery, hauling lime and making other permanent improvements, which sum was expended after the appellee had agreed to accept his money, before or after the period of redemption; that she had given notes totaling $300 to defendant Logan for rent after the premises had been sold at the foreclosure sale. She testified that it was expressly agreed that no rent would be charged, if she redeemed the premises. Standing uncontradicted, as it does, this testimony tends to show that both parties had an arrangement for redemption of the property prior to the expiration of the 12 months' redemption period.

Clara Young testified that defendant Logan had made the following statement to her at his office on August 28, 1933: "I told your sister that whenever she got the money, and paid me, I would make a Certificate out to Helen or anyone else."

Helen Wright, daughter of plaintiff, also testified that she had many conversations with defendant Logan at his office relative to the redemption of the farm and that he told her that at any time her mother or father obtained the money, he would make her a deed to the land in order to save it.

Alden Wright, son of Mrs. Wright, testified that his mother asked Mr. Logan at his office "to enter into writing" to give her an extension of time for redemption, and that Logan stated she could pay the amount due at any time, that his word was as good as a bond. The defendant, Logan, did not testify.

It thus appears from the uncontradicted testimony of several witnesses that defendant told the plaintiff at various times that she could redeem, either before or after the equity of redemption had expired; that during the period of right of redemption she expended

the amount of $597 on the premises, the major portion so expended being for permanent improvements made on the premises after defendant had made these statements to her; that the defendant told her during the latter part of April, 1934, that he would not give the land up, and that he intended to get a master's deed.

Defendant contends in his argument that the evidence does not show that the plaintiffs were prepared, even on the date of the hearing of this cause, to carry out their part of the contract, and to pay defendant the amount which she and her husband owed him. In view of the undenied testimony on behalf of the plaintiff, that the defendant told her during the latter part of April, 1934, that he did not intend to give up the property, and that he was going to get a master's deed, it becomes immaterial in this case, and her right to pursue her remedy in equity thereupon immediately accrued. It must be remembered that this is a bill to redeem from a foreclosure, and the law does not require a mortgagor to make a formal tender or allege an offer to redeem in his bill before he is entitled to redeem. *Taylor v. Dillenburg,* 168 Ill. 235.

It is well settled in this State that courts of equity will enforce oral agreements involving an extension of the statutory legal period of 12 months for the redemption of property from a foreclosure sale; especially in cases where the mortgagor has been fraudulently induced to rely upon the representations of the creditor, and has been so lulled to sleep as to allow the period of redemption to expire, without any effort to redeem. However, the latter element is not presented by the testimony in this case. There is no claim or proof that appellee was deceived by any trick, artifice or device to allow the time of redemption to pass; nor is this necessary in this case. *Diggins v. Axtell,* 196 Ill. App. 480; *Union Mutual Life Ins. Co. v. Kirchoff,* 133 Ill. 368; *Ogden v. Stevens,* 241 Ill. 556; *Taylor v. Dillenburg,* 168 Ill. 235.

It is clear from the evidence that the plaintiffs had a well grounded belief, based upon statements made by the defendant, that they might redeem their property either before or after the equity of redemption period had expired, and that relying on such statements, they expended $597 in making improvements on the premises sold under foreclosure, which could be of no benefit to them after such right of redemption had expired.

Appellee further contends that the doctrine of *res adjudicata* applies in this case, and that the question as to whether or not an oral contract had been entered into between appellee and appellants was decided in the United States Circuit Court of Appeals.

It appears from the record that on the second or third day of May, 1934, plaintiffs herein filed a petition in bankruptcy in the United States District Court for the Eastern District of Illinois, and submitted to the bankruptcy court a proposition for a five-year extension of their debts, pursuant to section 75 of the Bankruptcy Law. Upon a hearing, the referee denied confirmation of the proposed extension which ruling was confirmed by the District Court. In that proceeding, it was necessary for the appellants to have a majority of the creditors in number and amount consent in writing, to the proposed extension. It was contended by plaintiffs in the Court of Appeals that defendant Logan had orally consented to an extension of the time for the redemption of the property in question, and that therefore and thereby he had consented to the proceeding in the Bankruptcy Court. Whether or not he had consented to an extension for the time of redemption was not a matter in issue, and was not necessary to a determination of the issues before the Federal Court of Appeals.

Justice Alschuler in his opinion stated, *obiter,* that if Mr. Logan had expressed willingness to take the

money due on his mortgage, even if construed to apply to a time after the redemption, it was certainly not the equivalent of his assent to a proposition that, for a period of time which might extend to five years, he would refrain from taking deed to the property.

The bankruptcy proceeding was decided adversely to the plaintiffs. There was only one question involved, namely: had a majority of the debtors of appellants in number and in amount signed the extension agreement. Whether or not appellants and appellee had entered into an agreement to extend the time of the equity of redemption was not a material issue there; consequently the statement of the court in its opinion, that it did not appear from the evidence that a valid oral agreement had been entered into, could not and does not constitute *res adjudicata* in this proceeding.

"To constitute a bar, a former adjudication must have been upon a matter actually at issue, the determination of which was essential to the decree, and it must conclusively appear that the matter was so at issue, that it was necessarily determined by the Court rendering the decree which is interposed as a bar, by reason of such estoppel." *Fineman v. Goldberg,* 329 Ill. 507, 511; *White v. Sherman,* 168 Ill. 589.

"A finding of facts not necessary to uphold a former judgment does not conclude the parties. Even though a decree in express terms professes to find the particular fact, yet if such fact was immaterial and the controversy did not turn upon it, the decree will not conclude the parties in reference to that fact." *Hunter v. Troup,* 315 Ill. 293, 298.

The evidence clearly shows that the plaintiffs remained in possession of their farm after the foreclosure, and made improvements during the period of redemption, with the knowledge and consent of the defendant, relying on their arrangement with the defendant for the extension of the time of redemption.

A doctrine of *res adjudicata* did not preclude them from maintaining their action. The decree is therefore reversed, and the cause remanded with directions that the court ascertain the amount due from the plaintiffs to the defendant; that the plaintiffs be permitted to redeem within a reasonable time to be fixed by the court, and that upon payment thereof, the deed from the master in chancery conveying the premises described in the decree of foreclosure to the defendant be canceled, and that the defendant, Logan, be required upon such redemption to reconvey by a proper deed to Elizabeth Wright, the title acquired by him to the property through said master's deed and certificate.

*Decree reversed and cause remanded with directions.*