MARTHA HELDT, Indiv., as Ex'r, and as Trustee, *et al.*, Plaintiffs-Appellees, *v.* ARNOLD ROSENBROCK, Indiv., as Trustee, and as Ex'r, Defendant-Appellant.

Third District   No. 78-92

Opinion filed April 5, 1979.

Robert S. Grim, of Clinton, Tongren & Grim, of Peotone, for appellant.

Blanke, Norden, Barmann & Bohlen, of Kankakee, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a summary judgment which found that an option to purchase land was not effectively exercised by defendant, Arnold Rosenbrock.

Plaintiffs, Martha Heldt, Velma Willie and Lorna Mussman, sisters of the defendant, Arnold Rosenbrock, filed the present suit to partition certain Kankakee County real property which had been the family farm of the parties' father, John Rosenbrock. John Rosenbrock died in 1973 and was survived by his wife, Emma, his three daughters, Martha, Lorna, and Velma, and his son, Arnold. In his will, John left an undivided half interest in the 140-acre farm to his wife, Emma, and the remainder of his estate (including bonds, stock, the remainder of the farm, and a Grant Park residence) he placed in a trust. Arnold and Martha were to act as trustees, paying the trust income to Emma during her lifetime, and, upon her death, they were to sell the property and distribute the proceeds equally among the four children.

Two options relevant to the trust portion of the estate were also set forth in the will of John Rosenbrock. He gave his daughter Martha Heldt an option to purchase the family residence in Grant Park for not more than $10,000. He also gave his son, Arnold, a tenant on the farm, an option to purchase the trust portion of the farm, being the other undivided half interest in the 140 acres, within six months of Emma Rosenbrock's death. A maximum price of $300 per acre was set forth in the will as the purchase price under the option given Arnold. A will construction suit previously filed by Arnold was dismissed by the circuit court and this court affirmed that action. (*In re Estate of Rosenbrock* (3d Dist. 1977), 54 Ill. App. 3d 165, 369 N.E.2d 396.) The present suit, instituted by the sisters, individually and as executors of the estate of Emma Rosenbrock, centers upon Arnold's allegedly ineffective exercise of his option to purchase the trust portion of the farm. The plaintiff sisters filed a motion for summary judgment in their suit for partition, alleging the inefficacy of the exercise of the option by Arnold. The court granted judgment for the plaintiffs, finding that the purported exercise of the option was not an effective exercise of the option, but a counteroffer in that it specified additional terms not provided for under the option as set out in the will. Defendant Arnold Rosenbrock appeals from the entry of summary judgment.

The only question raised on appeal is whether the court erred in denying the efficacy of the exercise of the option and in entering summary judgment, based upon that finding, in favor of the plaintiffs.

A summary of the relevant background facts is necessary for a full understanding of the issue on review. As noted previously, John Rosenbrock died in 1973 leaving half of his 140-acre farm to his wife, Emma, and the remainder of his estate in a trust, the income to be paid to Emma during her lifetime and, upon her death, the proceeds of the sale of trust assets to the children, equally. With respect to the half interest of the 140-acre farm which was placed in trust, however, the will provided as follows:

> "The authorization and direction to my trustees to sell the assets of the John Rosenbrock Trust Estate are, however, made subject to this further provision: I direct my said trustees to obtain an impartial appraisal of the said farm land as of the date of my decease, in the event that my wife shall have predeceased me, or as of the date of the death of my wife, Emma Rosenbrock, if she shall have survived me. In the event that my son, Arnold Rosenbrock, shall desire to purchase said farm land, I direct that he be given a first and prior option so to do for a period of six months following the date of my decease, if my wife shall have predeceased me, or following the date of the decease of Emma Rosenbrock, if she shall have survived me, and that in the event that my said son, Arnold Rosenbrock, shall elect to exercise such option and to purchase said farm land, then and in such event I order and direct that he be permitted to purchase the farm at a price equivalent to four-fifths (4/5) of the appraised value of said farm land; provided, however, that in no event, regardless of the appraised value thereof, shall my son, Arnold Rosenbrock, be required to pay in excess of Three Hundred Dollars ($300.00) per acre for said farm land."

Sometime after the death of John Rosenbrock, in February of 1973, John's widow, Emma, and his children, the three daughters and the son, Arnold, began discussions concerning various matters in connection with John Rosenbrock's estate. One specific matter concerned the potential sale of the entire farm to Arnold Rosenbrock and his son. The record indicates that prior to June 21, 1974, Arnold Rosenbrock had indicated to his mother and his sisters that he desired to purchase the trust half of the farm, to which he had an option by virtue of his father's will, and, in addition to that, he also evidenced his desire to purchase the rest of the farm as well, which portion then belonged to his mother, Emma Rosenbrock. While the option price of $300 per acre was controlling as to the trust half of the farm, the parties negotiated concerning a purchase price on the remaining half owned by Emma Rosenbrock.

In a letter of June 21, 1974, Armen Blanke, the attorney for the estate of John Rosenbrock, sent a letter to Arnold Rosenbrock, on behalf of Arnold's mother and sisters. Attorney Blanke and Arnold Rosenbrock had apparently met on June 5, 1974, at which time Arnold made a purchase proposal and settlement offer concerning various matters pending between the family members, including the sale of the farm. In the letter of June 21, Blanke acknowledged awareness of Arnold's desire to purchase the trust half of the farm at that time, and he indicated his belief that such purchase could be accomplished even though Emma Rosenbrock was still alive. In that letter Blanke wrote: "Your mother and sisters agree that you may now purchase the trust one-half interest in the farm for $21,000, and the Trust, out of the proceeds, will pay the other one-half of the 1973 general taxes." In addition, Blanke's letter of June 21, 1974, conveys Emma Rosenbrock's offer to sell to her son her half interest in the farm for $84,000, expressly conditioned upon Arnold's resigning as trustee under the will.

A follow-up letter by Blanke on July 12, 1974, discusses the area of disagreement, the condition with respect to defendant's resignation as trustee, but the offer to sell the entire farm remained open. The July 12 letter to Arnold Rosenbrock contained the abstract from the title company, and in the letter Blanke recommends that Arnold have the title examined by a title examiner. In an August 20, 1974, letter from Blanke to Arnold, Blanke indicates a continued problem with respect to the title and the trustees' capacity to sell in Emma's lifetime. Blanke gives his opinion that such transfer can be accomplished and he closes by saying:

> "In that connection, if you desire that I obtain Chicago Title Insurance on the farm, I will have to have the abstract back for that property, so please obtain it and return it to me."

Further negotiations concerning all matters apparently continued thereafter for some time. The record indicates that in January 1975, a title commitment on the farm was issued, which commitment had been ordered by Armen Blanke.

On March 5, 1975, Blanke sent to Rosenbrock a deed for the property in preparation for a closing. He also enclosed an indemnification agreement required by Chicago Title Insurance Company, which agreement indemnified the company from potential liability resulting from the sale of the trust property prior to Emma's death. Blanke requested that the deed and the agreement be signed and returned to him so that closing could proceed in the "near future."

Then, on April 17, 1975, before the signing of any agreements, Emma Rosenbrock died. The three sisters were named as executors under her will, which granted to them equal shares in the half interest of the farm then held by Emma Rosenbrock. From the record it does not appear

what transpired between the sisters and their brother with respect to any previous negotiations concerning the farm property.

Thereafter, on September 8, 1975, Arnold Rosenbrock sent a letter to Martha Heldt and Arnold Rosenbrock, as trustees under the will of John Rosenbrock. That letter, in pertinent part, stated the following:

> "I, Arnold Rosenbrock, hereby notify the said trustees that I desire to exercise my option as provided under paragraph Sixth, sub-paragraph 3 to purchase said farm land under the conditions set forth in the paragraph.
>
> Said payment shall be made as soon as said Trustees provide a clear title to said real estate by a Chicago Title Insurance Company letter of commitment showing good title in the Trustees."

On April 2, 1976, the sisters filed the instant suit for partition of the property, alleging as part of their complaint that the September 8, 1975, letter from Arnold Rosenbrock was an ineffective exercise of the option in that it added a term not set forth in the option, that with respect to a letter of commitment, and thus amounted to a counteroffer never accepted by the trustees. Summary judgment for the sisters on this issue was entered by the circuit court on the basis of affidavits submitted by the parties and the court's examination of the relevant documents in the record. The court found that the letter of September 8, 1975, was a counteroffer in that it specified additional terms not provided for in the terms of the option as set forth in John Rosenbrock's will.

Having set out the necessary factual context, we turn to the issue on review, specifically, whether the findings and judgment of the trial court, with respect to the option, were proper. It is clear that if a certain construction with respect to options is rigidly applied to this case, then the September 8, 1975, letter from Arnold Rosenbrock would not be an effective acceptance of the option granted him in his father's will. The basis for that conclusion is found in the strict construction which requires an optionee to accept an option according to its terms, adding no new conditions. This is sometimes expressed as a requirement of an unequivocal, mirror-like acceptance on the part of an optionee. In the present case, however, there are considerations present that mandate that our consideration herein not be limited to a narrow and rigid application of such construction.

One such consideration is the family context within which the actions of the parties in this case took place. The option at issue is contained in the will of the parties' father, John Rosenbrock. The option itself dealt with a portion of family farm property which Arnold Rosenbrock had farmed as a tenant prior to his father's death. Upon John Rosenbrock's death, his widow, Emma Rosenbrock, and his son, Arnold, were named executors of the estate, while Arnold and his sister, Martha Heldt, acted as trustees

of the testamentary trust created by their father's will. Thus, discussion and negotiation relative to the option and to other matters concerning the estate were largely between family members, John Rosenbrock's widow, Emma, and his four children. Another consideration, within the family context, is the nature and progress of the negotiations between the family members. Those negotiations, which will be discussed later on in the opinion, become relevant to the interpretation of the September 8, 1975, letter of Arnold Rosenbrock in which he states his desire to exercise the option granted him in his father's will. Given the family context in this case, and given the nature and substance of the negotiations concerning the property, it is appropriate to invoke the Illinois equitable principle which holds that:

> "Equity looks through forms to the substance of a transaction, and will not permit the rights of parties to be sacrificed to the mere letter but will look to the spirit of the transaction to discover the truth." (*Knights v. Knights* (1921), 300 Ill. 618, 622, 133 N.E. 377; *Ogden v. Stevens* (1909), 241 Ill. 556, 89 N.E. 741; *Hall v. Wilson* (2d Dist. 1934), 277 Ill. App. 601, 606-07.)

In *Ogden v. Stevens* (1909), 241 Ill. 556, appellee had failed to exercise her option to redeem certain real estate within the 9 months specified in the written contract between the parties. The supreme court, in relying upon the above-stated principle, refused to enforce the strict letter of the written option and instead examined the acts and conduct of the parties with reference to the option, in order to determine their real intention. *Ogden v. Stevens* (1909), 241 Ill. 556, 565.

In the instant case, the record indicates that prior to June 21, 1974, the three parties plaintiff in this suit, and their mother, Emma Rosenbrock, understood and acknowledged their understanding that Arnold intended to exercise his option to purchase the half interest in the family farm held by the trust. Indeed, the parties were willing to allow such purchase to be accomplished at that time, even though the option, by the terms of the will, was not exercisable until after the death of Emma Rosenbrock. All this is made clear by the June 21, 1974, letter from Armen Blanke to Arnold Rosenbrock. It is true, as appellee-sisters note, that negotiations with respect to the purchase of the trust portion were only a part of overall settlement negotiations concerning both the farm property, in its entirety, and certain aspects of estate administration. It is also true that no final agreement was signed with respect to such settlement or any part thereof. Nevertheless, the substance of those negotiations is instructive and pertinent to language in the subsequent written exercise of the option by Arnold on September 8, 1975.

The record discloses that it was Armen Blanke, as attorney for the estate of John Rosenbrock and on behalf of the sisters, who first

introduced title insurance into the negotiations for the sale of the farm. It was he, who, by letter of August 20, 1974, offered to obtain title insurance on the farm, if that was desired by Arnold. It was he who obtained a title commitment on the farm in January 1975, in anticipation of an agreement. In an attempt to discount their relevancy, the appellees point out the fact that these matters all occurred prior to the time within which the option was exercisable by their brother, Arnold, since during this time period their mother was still alive. Yet, as noted above, the sisters acquiesced, along with their mother, in a position, taken during negotiations, that the option could even be made effective during the lifetime of their mother despite the will language to the contrary. In addition, while the option was not, by its terms, exercisable during the mother's lifetime, it was in existence at that time. By his father's will, Arnold Rosenbrock had the option, following his father's death, although it could only be exercised, according to the terms of the will, after his mother's death. It is clear from the record that prior to the time the option was exercisable under the will terms, the parties were negotiating concerning it, with an understanding that it would be exercised by Arnold, either within the context of an overall settlement agreement, or according to the terms of the will, after Emma's death.

These previous dealings of the parties with respect to the exercise of the option are relevant to the intentions and understanding of the parties with respect to the exercise of the option. When the previous dealings between the parties are taken into consideration, it becomes clear that when Arnold Rosenbrock included the sentence with respect to title commitment in his September 8, 1975, exercise of the option, he was not intending to add a new condition to the purchase of the property as the parties well understood. He was merely referring to what he believed had already been offered and arranged by the counsel for the estate and trustees, albeit within the context of the previous negotiations, concerning the exercise of the option to the trust portion of the farm.

The option letter sent by Arnold specifically notified the trustees that "I desire to exercise my option as provided" under the specific paragraph of his father's will "to purchase said farmland under the conditions set forth in the paragraph." It is stated, in some of the cases dealing with options, that a mirror-like acceptance in the exercise of an option makes the option effective. There could hardly be a more "mirror-like" exercise of an option than one which says, as Arnold does, that he was purchasing the farmland "under the conditions set forth in the paragraph." The portion of the letter which followed does not, in any manner, dilute the undertaking to follow the conditions set forth in the paragraph of his father's will but simply makes an allusion to payment under a procedure which Arnold was led to believe was consistent, by the attorney for the

estate in previous discussions and negotiations, and, under all the circumstances existing in the case, should not operate to defeat the exercise of the option granted to Arnold by his father on a farm Arnold was farming and had been farming for many years.

Under all the circumstances of the case, and looking to the substance of the transaction and not the mere letter of the documents, we conclude that the letter of September 8, 1975, shall be deemed an effective exercise of the option given Arnold Rosenbrock under the terms of his father's will. The decision of the circuit court to the contrary, accordingly, is reversed, and the case is remanded to the Circuit Court of Kankakee County for further proceedings not inconsistent with the opinion of this court.

Reversed and remanded.

STOUDER, P. J., and STENGEL, J., concur.