(No. 14252.—Decree affirmed.)

VILENA KNIGHTS, Appellee, *vs.* ELMER KNIGHTS, Trustee, *et al.* Appellants.

*Opinion filed December 22, 1921.*

1. EVIDENCE—*widow suing to enforce marital rights is a competent witness to transactions before her marriage.* In a suit by a widow to enforce homestead, dower and other marital rights of which she claims to have been defrauded by her deceased husband, where the defendants are the grantees of the alleged fraudulent conveyance, the widow may testify to transactions and conversations occurring before her marriage.

2. EQUITY—*equity looks to the substance of a transaction and not to form.* Equity looks to the substance of a transaction and not to its form, and will not permit the rights of parties to be sacrificed to the mere letter but will look to the spirit of the transaction to discover the truth.

3. SAME—*doctrine of equitable conversion as applied to vendor and vendee of real estate.* Where a valid, enforceable contract has been entered into for the sale of real estate, as between the vendor and vendee equity regards the vendee as the owner of the land and the vendor as the owner of the purchase money,. and the vendor is regarded as the trustee of the legal title for the benefit of the vendee and the vendee as trustee of the purchase money for the benefit of the vendor.

4. DEBTOR AND CREDITOR—*creditors may avoid conveyance in fraud of their rights regardless of form of transaction.* By whatever method of procedure it is accomplished, a transaction by which property is purchased by a debtor in the name of another to defraud his creditors may be avoided by the creditors, the property subjected to their claims and the same result obtained as if the title were actually in him; and the intricacies of the machinery and the number of instruments employed in effecting the conveyance can make no difference.

5. HUSBAND AND WIFE—*as to marital rights, wife is entitled to same protection as a creditor.* With respect to her marital rights the law affords the same protection to a wife as to a creditor, and the wife is within the protection of the statute against conveyances made with intent to defraud.

6. SAME—*when a conveyance before marriage is in fraud of marital rights.* Property transferred before marriage with the intention of defrauding an intended wife of her interest therein is regarded in equity as a fraud upon her marital rights, and where

the prospective husband furnishes the money to buy a home for himself and his intended wife but without her knowledge conducts the transaction through a third party and has a deed made to a trustee for the benefit of the husband for life and then to his children, the wife may enforce her marital rights in the property.

APPEAL from the Circuit Court of Coles county; the Hon. WALTER E. BREWER, Judge, presiding.

T. N. COFER, and MILES A. TIPSWORD, guardian *ad litem,* for appellants.

CHARLES C. LEE, and C. M. HEINLEIN, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is prosecuted to review a decree of the circuit court of Coles county awarding homestead, dower and other rights growing out of the marriage relation, to appellee, Vilena Knights, in a certain 80-acre tract of land held by appellant Elmer Knights as trustee, in a suit brought by appellee, charging that she had been defrauded of her marital rights in this property by the fraudulent conduct of her deceased husband, Charles H. Knights.

Appellee testified that she was married to Charles H. Knights January 29, 1914; that she had known him about three years before their marriage; that she was then past sixty years of age and he was past seventy years of age; that it was the second marriage for both of them; that during their courtship deceased told her that he owned 200 acres of land; that this land was heavily mortgaged and that he proposed to sell it and buy a smaller farm, so that they might have an unincumbered home and extra money to make them comfortable; that he sold the 200-acre farm and realized about $20,000 in cash from it; that they went together to look at a number of places and picked out the 80 acres in question as the place they wanted for their home;

that he arranged to have one Craig buy this place in Craig's name because he thought Craig could get it cheaper than he could; that he said he would furnish Craig the money with which to pay for it; that he told her Craig agreed to buy the property for him; that later he told her that Craig had bought the land for him and that they would get the place for their home as they had planned; that all this conversation and these transactions happened before they were married; that they went to town and bought their furniture and had it moved into the house about two weeks before they were married; that they moved into the house on this farm March 4, 1914, and lived there from that time until the death of her husband, February 2, 1921. Her testimony stands uncontradicted in this record.

Other testimony shows that Charles H. Knights sold his 200-acre farm early in the fall of 1913, and that he received, after all indebtedness had been paid, about $20,000; that he contracted with one Bolin for the purchase of the 80 acres in controversy at $200 an acre; that the formal written contract was made between Bolin as vendor and J. E. Craig as vendee; that Craig was acting for Charles H. Knights; that the contract was dated November 4, 1913; that Craig gave his personal check to Bolin for $16,000 and that Charles H. Knights protected this check by depositing $16,000 to Craig's credit; that Bolin conveyed this farm to Craig by a deed dated November 10, 1913; that Craig conveyed the farm to Elmer Knights as trustee, Charles H. Knights to have the use, control and income from the farm during his lifetime and at his death the trustee to sell the farm and divide the proceeds into nine equal parts, one part to go to each of eight of his nine living children and one part to the children of a deceased son; that neither Elmer Knights nor anyone else paid any consideration to Craig or to Charles H. Knights; that the deed was delivered to Charles H. Knights by Craig, and that Elmer Knights, the trustee, did not know for two years that the

property had been conveyed to him; that the trustee has never exercised any control over said lands; that Charles H. Knights left a will dated December 23, 1915, by which he bequeathed all his personal property to appellee; that this will was filed for probate by appellee February 7, 1921, and the petition for probate was set for hearing March 14, 1921; that in the petition filed by appellee she stated under oath that Charles H. Knights died seized of real estate of the value of $16,000 and of personal property of the value of $700; that the will was admitted to probate on March 14, 1921; that March 15, 1921, appellee filed a written renunciation of the will and elected to take under the statute, and that this bill was filed the following day.

The first contention made by appellants is that appellee was not a competent witness, but they cite no authority to support this contention. Appellants are defending as grantees under the deed from Craig, and appellee testified to transactions and conversations occurring before her marriage to Charles H. Knights. With respect to such transactions and conversations she was a competent witness. *Mueller* v. *Rebhan,* 94 Ill. 142; *Otis* v. *Spencer,* 102 id. 622.

It is next urged that appellee is barred from prosecuting this suit because of *laches,* but appellants do not support this claim with any evidence. There is not a word of testimony in this record that shows that appellee knew before the death of her husband that title to this farm was in Elmer Knights as trustee or otherwise. The only effort to produce any testimony along this line was testimony regarding two conversations occurring after the death of her husband, in which it was said that appellee stated that she had no interest in the real estate, that her husband had given it to his children, and that all she had was the personal property. Granting that she made these statements, it does not prove *laches* nor does it prove any other issue involved in this suit.

On the merits appellants argue that Charles H. Knights at no time had any legal right, title or interest in the lands in question excepting a life estate, and that he could not have made a conveyance of the lands in fraud of appellee's marital rights for the reason that he had never had an estate of inheritance in the property either before or after his marriage to her. Equity looks through forms to the substance of a transaction, and will not permit the rights of parties to be sacrificed to the mere letter but will look to the spirit of the transaction to discover the truth. Courts of equity will not be misled by mere devices nor baffled by mere forms, but they will disregard names and penetrate disguises of form to discover the substance of an act or transaction. (10 R. C. L. 380.) By whatever method of procedure it is accomplished, there is no doubt that a transaction by which property is purchased by a debtor in the name of another to defraud his creditors may be avoided by those creditors, the property subjected to their claims and the same result obtained as if the title were actually in him. The intricacies of the machinery and the number of instruments employed in effecting the conveyance can make no difference. (12 R. C. L. 601.) With respect to her marital rights, the law affords the same protection to a wife as to a creditor, and the wife is within the protection of the statute against conveyances made with intent to defraud. (*Higgins* v. *Higgins*, 219 Ill. 146; *Blankenship* v. *Hall*, 233 id. 116.) The situation presented by this record requires the application of the doctrine of equitable conversion. When a valid, enforceable contract has been entered into for the sale of real estate, as between the vendor and vendee equity regards the vendee as the owner of the land and the vendor as the owner of the purchase money. The vendor is regarded as the trustee of the naked legal title for the benefit of the vendee, and the vendee is the trustee of the purchase money for the benefit of the vendor. Therefore Craig, and through him Charles H. Knights, was the

equitable owner of the real estate in question after the contract of sale was entered into, in November, 1913. (*Rhodes v. Meredith,* 260 Ill. 138.) It has been so often said, and the authorities are so numerous, that if a prospective husband transfers his property before marriage with the intention of defrauding his intended wife of her rights of dower or any other interest which she might have as his wife in his property, such transfer is, generally, in equity held a fraud upon the marital rights of the wife, that citation of authorities seems unnecessary. The question is fully discussed in *Jarvis* v. *Jarvis,* 286 Ill. 478. A voluntary conveyance, such as the one now before us, made prior to a contemplated marriage by either party without the knowledge of the other is *prima facie* evidence of fraud on the other's marital rights. *Daniher* v. *Daniher,* 201 Ill. 489; *Jones* v. *Jones,* 281 id. 595.

Under the undisputed evidence in this record, and in conformity with the settled principles of equity, we hold that the chancellor properly held that all the transactions by which Charles H. Knights disposed of his interest in the 200-acre farm and placed the money received therefrom in the 80-acre farm in question were one continuous scheme to defraud appellee of her marital rights in her prospective husband's property.

The decree of the circuit court is affirmed.

*Decree affirmed.*