**WEST v. MILLER et al.** *

No. 5445.

Circuit Court of Appeals, Seventh Circuit.

June 26, 1935.

Rehearing Denied Aug. 7, 1935.

Writ of certiorari denied 56 S. Ct. 156, 80 L. Ed. ——.

William D. Tatlow and Irving W. Schwab, both of Springfield, Mo., and Alvin E. Stein, of Chicago, Ill., for appellant.

Harry P. Weber and Henry F. Tenney, both of Chicago, Ill. (Walter I. Deffenbaugh, of Chicago, Ill., of counsel), for appellees.

Before SPARKS, FITZHENRY, and ALSCHULER, Circuit Judges.

SPARKS, Circuit Judge.

Appellant brought suit in equity to establish her dower interest in a certain trust estate alleged to have been created by her deceased husband as a fraud on her dow-

er rights. to compel the appellees, the Northern Trust Company, the trustee, and Bina West Miller, the principal beneficiary, to account for whatever amount the court determined to be due her, and to compel Mrs. Miller to account for all property acquired by her as a result of a certain agreement alleged to have been invalidly entered into between her and appellant on June 1, 1929. The bill also prayed, in the event that the two agreements were found valid, that the Northern Trust Company be ordered to continue the payments agreed upon June 1, 1929, by appellant and Mrs. Miller, and that they be made a prior charge upon the trust estate and the income therefrom, and that Mrs. Miller be ordered to pay the sum of $2,675 alleged to be due under the agreement of June 1.

The District Court found that at the time of his death the deceased was domiciled in Illinois, hence the case was governed by the law of that state, according to which his widow had no inchoate dower in the personal property of her husband, hence no right against the property in the trust estate which no longer belonged to her husband at the time of his death. The court also found that the agreement of June 1 between appellant and Mrs. Miller was a valid and binding contract. It therefore dismissed the bill of complaint for want of equity.

Appellant is the widow of Edward F. West who died in California, May 20, 1929, while there on a business trip. For many years prior to his death he had been engaged in the business of adjusting insurance claims, and in connection with that work he had traveled all over the United States. In 1927 he and appellant had agreed to separate, and in connection with that agreement had executed a separation agreement and property settlement according to the terms of which West bound himself, his heirs and assigns, to pay her the sum of $200 a month during her life, and each released all claims of any nature against the property of the other.

In February, 1926, West conveyed to the Northern Trust Company as trustee certain securities, the net income from which it was to pay to him during his lifetime, and upon his death, to his sister, Bina West during her life, and after her death, to their sister, appellee Mabel West Davis, and then to her children. The trust was to terminate upon the death of the last survivor of the group, West, his two sisters, and the two children of Mrs. Davis, upon which the corpus of the estate and any undistributed income were to be conveyed to the descendants of Mrs. Davis, or if none, to revert to the estate of Bina West. The trust agreement was revocable only during the lifetime of Bina West, and by her, and if revoked while West lived, the corpus was to return to him, but if after his death, then the entire estate was to go to her. This agreement was revoked in December, 1928, at which time a new agreement was entered into between the same parties. The same provision was made concerning the payment of the net income to West during his lifetime. A new provision was included which dealt with the situation in case appellant died or she and West were divorced and he remarried someone other than appellant, in which case, upon his death a certain monthly income was to be paid to the widow, and to their children, if any. This second agreement provided for revocation only by Bina West, with the consent of West, and only during the lifetime of both of them. West retained no control over the corpus of the estate, only retaining the right to assign future income for a period not to exceed one year from the date of assignment.

When West died, Mrs. Miller sent for appellant, and after the funeral they had a conference in order to settle all business between them. It was then that appellant heard of the trust agreements for the first time. Mrs. Miller suggested that appellant engage an attorney to represent her in the negotiations, but appellant did not accept the suggestion and had no attorney until after their settlement. On June 1, 1929, the two of them entered into a written agreement by which appellant acknowledged the validity of the property settlement between herself and her husband and agreed to be bound by it, and promised to execute quitclaim deeds in favor of Mrs. Miller for certain properties claimed to be owned by the latter, and agreed not to put in any claim for any personal property on two of the properties, acknowledging Mrs. Miller's ownership of such personalty. By the same agreement, Mrs. Miller bound herself to carry out West's obligation under the property settlement to pay $200 a month to appellant during her life, and to add $100 a month, making a total allowance of $300 a month for the life of appellant, and she agreed to make provision in her will to continue such pay-

ments should she predecease appellant. In addition, she agreed to pay all debts of appellant then outstanding, up to $2,850, and if they proved to be less than that amount, to give appellant the balance in cash. It was also agreed between them that insurance left by West and payable to appellant in the amount of $7,325 should be turned over to appellee, the Northern Trust Company, to establish a trust fund in favor of appellant, and upon appellant's turning over such insurance proceeds, Mrs. Miller would add to the fund $2,675, in order to bring it up to the sum of $10,000. The agreement recited that it was made in full settlement of all rights appellant might have, if any, in the estate of West, and was intended as a release of any and all claims she might have, statutory or otherwise, in any property of his, real or personal, legal or equitable, in trust or otherwise.

The court found that all the provisions of the agreement of June 1, were carried into effect with the exception of the one relating to the establishment of the trust fund with the insurance proceeds. As to that, it found that the payment by Mrs. Miller of the $2,675 was conditioned upon the deposit by appellant of the $7,325 insurance proceeds, and as the latter had never made that deposit, no trust fund was ever created.

Appellant assigns as error the finding of the court that the deceased was domiciled in Illinois at the time of his death rather than in Missouri as claimed by her, the failure of the court to hold the trust agreement invalid whether decided according to the law of Illinois or that of Missouri, and the finding that the agreement of June 1 was a valid contract, or if it were valid and binding, the failure of the court to fix a lien upon the trust estate and the income from it to secure the payment of the monthly allowance provided by that agreement, and the failure of the court to order Mrs. Miller to pay to appellant the sum of $2,675 also provided for by that agreement.

We do not deem it necessary to consider the question of domicile beyond stating that there was ample evidence in the record to sustain the court's finding that decedent was domiciled in Illinois at the time of his death. We think, however, that the validity of the trust agreement does not depend upon whether his domicile was Illinois or Missouri since we are convinced that it was equally valid according to the law of either jurisdiction. The statutes of the two states are somewhat similar, in that both distinguish between the dower right to a share in any *real estate* owned by the spouse *at any time during the marriage,* and the right to a distributive share in any *personal property* owned by the spouse *at the time of his death.* See Smith-Hurd Illinois Annotated Statutes, c. 41, § 1, and Missouri Revised Statutes 1919, sections 315, 319, 321, and 323 (Mo. St. Ann. §§ 318, 323, 325, 327, pp. 202, 208, 212, 215).

Appellant cites a number of cases, both Illinois and Missouri, to support her proposition that the trust here involved is invalid according to the law of either jurisdiction. One group of these cases relates to conveyances of real property in attempted derogation of the right to dower.[1] A second group has to do with attempts to defeat a spouse's right to a distributive share in personal property owned by the deceased spouse at the time of death, by means of testamentary disposition or gifts causa mortis.[2] Appellant also cites a group of Illinois cases relating to the right of a wife upon renouncing the will of her husband to take both her dower in his real estate, and her distributive share in personal property belonging to him at the time of his death.[3]

We think the law of both states is very well stated in Crecelius v. Horst, 89

---

[1] Headington v. Woodward (Mo. Sup.) 214 S. W. 963; Weller v. Collier (Mo. Sup.) 199 S. W. 974; Blankenship v. Hall, 233 Ill. 116, 84 N. E. 192, 122 Am. St. Rep. 149; Higgins v. Higgins, 219 Ill. 146, 76 N. E. 86, 109 Am. St. Rep. 316; Deke v. Huenkemeier, 289 Ill. 148, 124 N. E. 381; Knights v. Knights, 300 Ill. 618, 133 N. E. 377; Shoup v. Shoup, 319 Ill. 179, 149 N. E. 746.

[2] Stone v. Stone, 18 Mo. 389; Davis v. Davis, 5 Mo. 183; Newton v. Newton, 162 Mo. 173, 61 S. W. 881; Straat v. O'Neil, 84 Mo. 68; Rice v. Waddill, 168 Mo. 99, 67 S. W. 605; Tucker v. Tucker, 32 Mo. 464; Kerwin v. Kerwin (Mo. App.) 204 S. W. 922; In re Taylor's Will, 55 Ill. 252; Zakroczymski v. Zakroczymski, 303 Ill. 264, 135 N. E. 398.

[3] Boyles v. McMurphy, 55 Ill. 236; White v. Dance, 53 Ill. 413; Lessley v. Lessley, 44 Ill. 527; Gullett v. Farley, 164 Ill. 566, 45 N. E. 972; Canavan v. McNulty, 328 Ill. 388, 159 N. E. 782.

Mo. 356, 14 S. W. 510, 511, where the court said, reversing a decision of the lower court (11 Mo. App. 304) also relied upon by appellant: "By the laws of this state the widow is endowed in the personal property of the husband, but she is endowed in such personal property only as he owned at the time of his death. Until then he may dispose of such property without her consent, freed from any claim for dower. He cannot by will, however, deprive her of her dower in the personal property; nor can he defeat her dower therein by resorting to a deed, or other contrivance which is testamentary in its character. * * * Now, there is no evidence showing that Crecelius was in feeble or delicate health when this lot was purchased and the house built, nor that he anticipated death at an early day. Of course, every will is made in anticipation of death at some time. * * * Before a disposition of personal property made by the husband in his life-time is avoided, as in fraud of dower rights of the wife, the disposition should be shown to be testamentary in its character, and should be clearly shown to have been made for the purpose of defrauding her of her dower."

We find no case in which the right of a husband to make a completed gift, inter vivos, of his personal property is questioned, regardless of his motive in so doing. And in McLaughlin v. McLaughlin's Administrator, 16 Mo. 242, the court even went so far as to say: "The wife's dower at common law, and by our statutes, attaches to the land whereof the husband was seized during the coverture. Our statute only endows the widow of personalty belonging to the husband at the time of his death. *Hence, any disposition he may make of his chattels during his life, a gift, or any disposition to prevent the wife's dower attaching, if made during his life, will defeat her dower.*"

■ Appellant argues that, because a husband may not dispose of his personalty by will in such a way as to bar a wife's dower, he may not accomplish the same result by a trust agreement, made for that purpose. The cases do not so hold. It is because of a wife's inchoate dower in all real estate owned by the husband during coverture that he may not deprive her of dower in such real estate without her consent. No such inchoate dower exists in personalty, and there appears to be no way to prevent him from disposing of any and all personalty, providing such disposition is not made causa mortis or in contemplation of separate maintenance proceedings and in order to defeat orders which may be entered in such proceedings. Cf. Tyler v. Tyler, 126 Ill. 525, 21 N. E. 616, 9 Am. St. Rep. 642.

■ Appellant, however, also argues that a trust agreement such as was here involved, reserving a life interest in the income of the estate, is in effect a disposition causa mortis. The cases upon which she relies to support this proposition, however, all have to do with conveyances which were set aside because made in contemplation of death. It has been generally held that a conveyance in trust intended to vest title at once in the trustee creates a valid inter vivos trust, even though the grantor reserves certain rights and powers to himself. See Bogert on Trusts and Trustees, vol. I, § 103, and cases there cited. See also Davis v. Rossi, 326 Mo. 911, 34 S.W. (2d) 8. It seems clear that where, as here, a settlor, having no reason to assume that death was impending, conveyed his personal property to a trustee, relinquishing all control over the corpus and all right to revoke the trust, reserving nothing but the bare right to enjoy the income during his life, he created a completed inter vivos trust which cannot be set aside on the ground that it was testamentary in character.

■ Appellant also argues that a voluntary conveyance such as here involved is void as against creditors, and quotes from Corpus Juris, vol. 27, page 602, to the effect that a person cannot settle his estate in trust so as to have the benefit of it during life and place the right to the use of it or to the income from it beyond the reach of his creditors, either prior or subsequent, by a provision against alienation or otherwise. We have no fault to find with that statement as a general principle of law, but see no reason for applying it to the facts of the case at bar.

■ For the foregoing reasons we hold that the District Court was correct in ruling that the trust involved in this case was a valid one, and dismissing appellant's bill in equity. We also agree with the conclusion of the District Court that she is bound by her agreement of June 1, 1929, since there appears to have been adequate consideration for the settlement made at that time, and since appellant continued to accept and retain the benefits of that settle-

ment. There was no error in the denial of her claim to a lien upon the trust estate for the payment of the monthly income, for by her agreement with Mrs. Miller she released her interest in her husband's estate and accepted Mrs. Miller's agreement to pay the monthly income which her husband had agreed to pay, plus one hundred dollars per month extra. Neither was she entitled to the $2,675 which Mrs. Miller agreed to add to the trust fund which was to be created by appellant with the proceeds of her insurance on the life of decedent, since that trust fund was never created by appellant.

Decree affirmed.

