SHERI A. ROTH *et al.*, Plaintiffs and Counterdefendants-Appellants, v. CARLYLE REAL ESTATE LIMITED PARTNERSHIP VII, Defendant (Timothy J. McGreevy, Intervening Defendant and Counterplaintiff and Counterclaimant-Appellee).

First District (2nd Division)   No. 83—1538

Opinion filed December 11, 1984.

Law Offices of Patrick A. Tuite, Ltd., of Chicago (Patrick A. Tuite and David S. Mejia, of counsel), for appellants.

Berman, Fagel, Haber, Maragos & Abrams, of Chicago (Joel A. Haber, Floyd Babbit, Glen Keysor, and Steven J. Teplinsky, of counsel), for appellee Timothy J. McGreevy.

JUSTICE PERLIN delivered the opinion of the court:

In November 1978, Sheri Roth (plaintiff) and Donald Lewis filed a complaint for injunctive and declaratory relief against Carlyle Real Estate Limited Partnership VII (Carlyle) in which they sought to have the legality and validity of their investment in Carlyle determined by the court. They asked that Carlyle be ordered to return to them their original investment and any dividends due thereon.

In March 1979, Timothy J. McGreevy filed a petition to intervene. He alleged that the funds used by plaintiff and Donald Lewis to purchase their limited partnership interest in Carlyle were funds belonging to Worm World, Inc. (WW), a Colorado corporation. McGreevy had been appointed receiver for WW by the United States District Court for the District of South Dakota in 1978. Uncontradicted documents filed by McGreevy indicated that in July 1978, a class action lawsuit was filed in that Federal court on behalf of all investors in WW, alleging that Tom Roth (husband of plaintiff Sheri Roth) and Donald Lewis were officers of WW; that they and WW had engaged in the selling of "securities" in WW, in violation of both Federal and South Dakota law; and that they had made false and fraudulent misrepresentations to investors. The Federal judge in that case had appointed McGreevy receiver, authorizing him to take all necessary steps to collect obligations owing to WW. In August 1980, judgment was entered in favor of the plaintiff class against Lewis, Tom Roth and WW in the amount of $737,571.24, the aggregate sum paid by the known class member investors in WW.

McGreevy also filed with the trial court in the instant action undisputed documents showing that in April 1979, Tom Roth and Donald Lewis had been indicted by a United States grand jury in the State of Colorado and charged with six counts of fraud. The indictments charged that from June 1976 to December 1978 Roth and Lewis:

"devised and intended to devise a scheme and artifice to

defraud and for obtaining money by means of false and fraudulent pretenses, representations, and promises from that class of persons who could be induced to sign a Purchase Agreement and pay sums of money specified therein, agreeing to be an earthwork 'Grower' for Worm World, Inc. *** well knowing at the time that said pretenses, representations and promises hereinafter specifically described would be and were false and fraudulent when made ***."

On October 5, 1979, Tom Roth pleaded guilty to one count of fraud, and was sentenced to five years' imprisonment. (The disposition of Lewis' case is not noted in this record.)

McGreevy contended that plaintiff's and Donald Lewis' interests in Carlyle were purchased with money belonging to WW. (Roth purchased one 50-share interest for $50,000 in November 1977, and a second 50-share interest for the same sum in January 1978. Lewis purchased his 50-share interest for $50,000 in November 1977.) McGreevy requested the trial court to impose a constructive trust in favor of the receiver on those partnership interests and all monetary benefits arising out of those interests.

Over plaintiff's and Lewis' objections, the trial court granted McGreevy's petition to intervene.

In responding to McGreevy's request to admit facts, the following was admitted by plaintiff:

"On November 18, 1977, Donald L. Lewis caused funds to be withdrawn from the account of Worm World, Inc. in the total of $50,000.00, said fund payable to the order of Don L. Lewis or otherwise to be used for his benefit. On November 18, 1977 and on January 25, 1978 Tom Roth caused funds to be withdrawn from the account of Worm World, Inc. in separate withdrawals of $50,000.00 on the aforementioned dates. These funds were transferred for the use and benefit of Sheri A. Roth. Sheri A. Roth used those funds to purchase, on two separate occasions, at the aforesaid dates, 50 interests in Carlyle Real Estate Limited for her own use and benefit."

Plaintiff further admitted that her shares in Carlyle were purchased "solely" with the funds withdrawn from WW by her husband.

In May 1982, the trial court granted McGreevy's motion for summary judgment as to Donald Lewis. (Lewis did not appeal from that judgment, and his effort to join in Roth's subsequent appeal in the instant case was denied by this court.)

In February 1983, McGreevy filed a motion for summary judgment against plaintiff based primarily on admissions by plaintiff and

the aforestated Colorado and South Dakota court documents. The trial court granted the motion. Plaintiff then filed a motion to vacate the summary judgment. The trial court denied her motion and, finding that it contained untrue statements made without reasonable cause, awarded McGreevy $1,000 in attorney fees.

On appeal, plaintiff contends that summary judgment should not have been entered. She appears to contend that there exist material questions of fact with regard to whether her husband was "entitled" to the money he withdrew from the WW account and then transferred to her and with regard to whether she was the recipient of an untainted "gift" from her husband. Plaintiff also contends that under the facts of this case the court should not have imposed a constructive trust.

The standards governing the determination of motions for summary judgment have been often stated:

> "It is established that summary judgment should be granted only when the pleadings, depositions and admissions on file, together with the affidavits (if any) show there was no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. [Citations.] However, summary judgment is a drastic remedy and should be granted only when the movant's right thereto is clear and free from doubt [citation], and, in passing on the motion, the trial court must construe the documents presented strictly against the movant and liberally in favor of the opponent [citation]. Further, the opponent may rely upon reasonable inferences which may be drawn from the materials considered on the motion in the determination of whether a genuine issue of material fact exists. [Citation.]" *Molloy v. Santucci Construction Co.* (1979), 78 Ill. App. 3d 249, 251.

It need be mentioned that both in the trial court and in this court plaintiff is unable to state with certainty the material facts she finds to be in issue. It appears she is now contending that there existed a factual issue as to whether Tom Roth was entitled to the $100,000 he took from WW's account and transferred to his wife. First, we observe that this contention was not raised at the trial level and, therefore, may not be raised on appeal. (*Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 350 N.E.2d 252.) However, even if it could be shown that this contention was suggested below, we would find it to be without merit.

■ First, in response to a request to admit that the funds withdrawn by Tom Roth from WW and then transferred to plaintiff

"consisted of monies received by investors and deposited into the account of WW," plaintiff first so admitted. Then, with leave of court, she amended her response to state that she had "no specific knowledge" of this fact and so denied it. Supreme Court Rule 216 states, in relevant part:

> "(c) Admission in the Absence of Denial. Each of the matters of fact *** which admission is requested *is admitted unless* *** the *party* *** serves *** either (1) a *sworn* statement denying specifically the matters of which admission is requested or *setting forth in detail the reasons why he cannot truthfully admit or deny those matters* ***." (Emphasis added.) (87 Ill. 2d R. 216.)

Here, plaintiff did not sign or swear to the response to the request to admit facts. Nor did she set forth in detail the reasons why she could neither admit nor deny the request. Failure to conform one's response to requirements of this rule have been held to be admissions of the truth of the fact asserted. *Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 328 N.E.2d 167; *Liepelt v. Norfolk & Western Ry. Co.* (1978), 62 Ill. App. 3d 653, 378 N.E.2d 1232.

Second, the court documents McGreevy filed from the civil action in South Dakota and the criminal action in Colorado established that all of the funds received by WW from investors and placed in WW's account were garnered through fraudulent and unlawful means. Plaintiff has not attempted to contest this fact. Plaintiff admitted that these same funds were those given her by her husband, and used by her to purchase her interest in Carlyle. Plaintiff has made no effort to assert evidentiary facts which contradict this conclusion.

Plaintiff's sole response to the motion for summary judgment was an unverified memorandum in which she declared, but did not identify, the existence of "issues of fact." "Merely alleging that a genuine issue of material fact exists without presenting any statement of fact to contradict the defendants' version, does not thereby create such an issue. [Citations.]" (*Peltz v. Chicago Transit Authority* (1975), 31 Ill. App. 3d 948, 951, 335 N.E.2d 74.) The party opposing summary judgment "cannot sit quietly by" but is "required to raise any defenses and produce evidence tending to show a question of fact exists. [Citation.]" *Murphy v. Urso* (1980), 83 Ill. App. 3d 779, 795, 404 N.E.2d 287.

■ When, as here, there are no facts in dispute, the court may draw inferences therefrom. If no fair-minded person could draw dif-

ferent inferences from those facts, then there is no triable issue of fact and the motion for summary judgment should be granted. (*Peltz v. Chicago Transit Authority* (1975), 31 Ill. App. 3d 948, 335 N.E.2d 74.) We believe the trial court could properly conclude that on the basis of the undisputed facts found in plaintiff's admissions and the Colorado and South Dakota courts' documents that the money used by plaintiff to purchase her interests in Carlyle was fraudulently obtained from investors by WW and then fraudulently and unlawfully obtained by Tom Roth from WW. Tom Roth had no right of ownership to these funds.

■ From this it follows that the purported "gift" of those ill-gotten gains to plaintiff here need not be countenanced by the court. Courts will not be misled by mere devices and subterfuges, but will disregard names and penetrate disguises to discover the substance of an act or transaction. (*Knights v. Knights* (1921), 300 Ill. 618, 622, 133 N.E. 377.) A gift from a husband to a wife made in hindrance of the husband's creditors is void and of no effect. *McKey v. Emanuel* (1914), 263 Ill. 276. See also *Tcherepnin v. Franz* (N.D. Ill. 1978), 457 F. Supp. 832; Ill. Rev. Stat. 1981, ch. 59, par. 4.

Therefore, we find that no issue of material fact existed which would preclude the trial court's entry of summary judgment in favor of McGreevy.

Plaintiff's final contention is that the remedy of a constructive trust was in this instance inappropriate because "in order to establish a constructive trust, fraud must be both pleaded and supported by proof" and that here McGreevy failed to do so. Even presuming that fraud was not properly pleaded and proved here, we do not believe that the court erred in imposing a constructive trust.

■■ ■ Illinois law holds that a constructive trust may be imposed when so required by equity and good conscience; the presence of fraud is not controlling. (*Selmaville Community Consolidated School District v. Salem Elementary School District* (1981), 96 Ill. App. 3d 1062, 1066, 421 N.E.2d 1087.) In *Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 454-55, 411 N.E.2d 1067, the court held:

> "Stavros is incorrect in assuming that a constructive trust may only be imposed where there is fraud or the breach of a fiduciary relationship. A constructive trust is by no means restricted to those grounds. [Citation.] The particular circumstances in which equity will impress a constructive trust are as numerous as the modes by which property may be obtained

through bad faith and unconscionable acts. [Citations.] A constructive trust is imposed by a court because the person holding title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. [Citations.] An action to prevent such unjust enrichment is maintainable in all cases where one person has received money under such circumstances that in equity and good conscience he ought not retain.

\* \* \*

\*\*\*. To impose a constructive trust, no fiduciary duty or relationship need exist between the person holding the property and the aggrieved party. ' "Restitution, by virtue of its adaptability to individual cases on equitable principles may \*\*\* reach situations beyond the grasp of other civil or criminal remedies and do justice on equitable principles \*\*\*. [Citation.]" ' [Citation.] Although the transaction assailed in constructive trust cases is usually one between the parties directly, this is not a prerequisite. [Citation.] The way in which the particular transaction arises is immaterial. [Citation.] A third party who induces a breach of a trustee's duty of loyalty, or participates in such a breach, or knowingly accepts any benefit from such a breach, becomes directly liable to the aggrieved party. [Citations.]" (See also *Chicago Park District v. Kenroy Inc.* (1982), 107 Ill. App. 3d 222, 437 N.E.2d 783.)

We find that the evidence in the present case supports the imposition of a constructive trust. To allow plaintiff to retain the funds given her by her husband would be to allow her to "profit by a wrong."

For the reasons here stated, the judgment order of the trial court is affirmed.

Affirmed.

HARTMAN, P.J., and DOWNING\*, J., concur.

---

\*Justice Downing participated in the decision of the above-captioned case before the expiration of his term in office.