AMERICAN GARDEN HOMES, INC., Plaintiff-Appellee and Cross-Appellant, v. GELBART FUR DRESSING *et al.*, Defendants-Appellants and Cross-Appellees.

First District (4th Division)   Nos. 1—91—0684, 1—91—0925 cons.

Opinion filed September 30, 1992.—Rehearing denied December 18, 1992.

James S. Gordon and Edward Slovick, both of Chicago, for appellants Gelbart Fur Dressing, James Mills, John Mills, and John Pigott.

David J. Lloyd, of Berger, Newmark & Fenchel, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

■ Plaintiff, American Garden Homes, Inc., brought an action in the circuit court of Cook County against defendants, Gelbart Fur Dressing (hereinafter Gelbart), Ronald S. Fishman, Barry S. Fishman, Jerrold Sager, Donald E. Vacin, Theodore Gertz, as trustee for the Arnold Mass Children's Trust, and Arnold M. Mass, James Mills, John Mills, and John Pigott pursuant to the Mortgage Act (hereinafter the Act) (Ill. Rev. Stat. 1973, ch. 95, pars. 52, 53, 54). The Act allows a mortgagor who has paid in full to compel a release of his mortgage and to recover a penalty and reasonable attorney fees from his mortgagee. Judgments were entered in favor of plaintiff. Defendants were ordered to release the mortgage and award plaintiff $42,941 in attorney fees. Defendants appeal from the adverse judgments as to count III and as to the counterclaim. Plaintiff appeals from the trial court's denial of its breach of contract claim.

The issues on appeal are whether the trial court erred in finding that (1) plaintiff had standing to file suit as a "party aggrieved" under the Act (Ill. Rev. Stat. 1973, ch. 95, par. 54); (2) defendants were liable pursuant to the Act and that full payment of the mortgage had been received; (3) plaintiff was entitled to an award of all of its attorney fees for the entire case; (4) the Shapiro offer to purchase the Meadow Lane property was a sham; and (5) plaintiff failed to prove damages for its breach of contract claim.

We affirm.

Plaintiff was a general partner in the Meadow Lane Partnership that was organized in May 1971. Defendants were limited partners with a minority interest. Realty was purchased by the partnership with the help of borrowed funds. The debt was secured by a mortgage guaranteed by the limited partners and the principals of American Garden Homes, Inc. When the mortgage had been paid in full, John Pigott obtained possession of the mortgage documents.

A land trust was established by plaintiff on June 29, 1971, at Western National Bank of Cicero. The Meadow Lane Partnership was the beneficiary and plaintiff had power of direction. Also around that time, the land trustee purchased some real estate in Wheeling, Illinois. On October 17, 1972, the Exchange National Bank of Chicago lent $280,000 to the land trustee. The loan was secured by a note and personally guaranteed by Norman Fishman and Jerrold Ruskin, both acting in behalf of plaintiff; and by John Mills, Ronald Fishman, Norton Shapiro and Arnold Mass, all acting on be-

half of Gelbart. The Exchange National Bank notified the guarantors that the loan was past due on September 11, 1975.

Some of the guarantors met at the Exchange National Bank on October 3, 1975. Each paid a percentage of the loan equivalent to his partnership interest. They further agreed to allow the law firm of Anixer, Delaney, Bilandic & Pigott to hold the mortgage documents as escrowee for the benefit of those who had paid the bank. An escrow letter was prepared. Plaintiff contends that it did not ask Exchange National Bank to release the mortgage.

Plaintiff and Norman Fishman, Jerrold Ruskin, Gelbart, James and John Mills, and the Arnold Mass Children's Trust entered into a letter agreement. The essence of the agreement was that plaintiff had to gain the approval of the majority of the partners before engaging in transactions with the partnership assets. It was agreed to proceed with the sale of the partnership real estate, asking $270,000 for the realty but accepting $225,000.

In March of 1983, Norman Fishman asked Pigott to deliver the note and the mortgage. Less than one week later, he asked for the mortgage documents to be turned over to the attorneys for Meadow Lane. Pigott denied both of these requests, stating that he was holding these documents for the guarantors, not for the partnership. Plaintiff filed suit against all of the limited partners. The trial began on June 19, 1990. Defendants filed their notice of appeal from the judgments against them as to count III of the amended complaint and as to their counterclaim.

Defendants' first argument on appeal is that plaintiff has no standing to file a suit as a "party aggrieved" under the Act. (Ill. Rev. Stat. 1973, ch. 95, par. 54.) Defendants argue that the Act should be interpreted restrictively in terms of the parties who have rights. They contend that plaintiff is not a mortgagor and therefore the Act is inapplicable, despite Pigott's holding of the mortgage documents.

We disagree.

■ "Party aggrieved" is a general term allowing a broad spectrum of parties to seek relief through a civil action. The legislature intentionally chose such broad language so as not to frustrate the purpose of the Act. In order to effect its purpose, the Act should be subject to liberal interpretation. (*Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690.) The purpose of the Act is to allow the mortgagor to obtain a release when the terms of the mortgage have been fully satisfied. Standing is determined by the basis of one's interest in the litigation, not by whether or not one has legal title to

the property in question. (See *Long v. Elk Grove Village* (1978), 64 Ill. App. 3d 1006.) Despite majority approval by the partners, sale of the real estate was fruitless because Pigott, the attorney agreed upon by the guarantors, would not release the mortgage. He indicated that he was holding the note and mortgage for the guarantors, not the partnership. The effect of a narrow statutory interpretation would allow a partnership deadlock to last indefinitely. Meadow Lane Partnership realty has been held hostage for over 10 years due to the attempt to impose this type of interpretation.

Plaintiff has standing seeking to challenge its debt. Norman Fishman and Jerrold Ruskin were working on behalf of plaintiff. They were among those who personally guaranteed the loan from Exchange National Bank. We agree with plaintiff's interpretation of section 4 of the Act and find that plaintiff is a "party aggrieved" and legitimately entitled to seek relief under the Act. Ill. Rev. Stat. 1973, ch. 95, par. 54.

■ Defendants' second contention on appeal is that, whether or not they are liable under the Act, there was no evidence that the mortgage along with the debt has been fully satisfied. Defendants argue that the payments made to Exchange National Bank cannot be interpreted as capital contributions made to satisfy the mortgage. They do not recognize any commonality between those claiming an interest in the mortgage and those claiming an interest in the debt. We disagree.

Here, the trial court found that the funds paid to Exchange National Bank on behalf of plaintiff and in relation to its ownership interest in Meadow Lane were the functional equivalent of capital contributions to the partnership. (See *Roth v. Carlyle Real Estate Ltd. Partnership VII* (1984), 129 Ill. App. 3d 433, 438-39.) The trial court reasoned that "the identity between the beneficial owners of the land trust and those who paid off the note caused a cancellation of the debt and a merger of the ownership and the debt interests." Our supreme court has defined the doctrine of merger as follows: " 'Rights are said to be merged when the same person who is bound to pay is also entitled to receive.' " (*Jurado v. Simos* (1988), 166 Ill. App. 3d 380, 382, quoting *Donk Brothers & Co. v. Alexander & Taussig* (1886), 117 Ill. 330, 338.) Therefore, plaintiff's payments on the debt to Exchange National Bank may be considered merged with its ownership interest in the Meadow Lane realty. The application of the merger doctrine, as well as the trial court's conclusion as to the function of the payments, allows ample evidence that full payment of the mortgage had been received.

Defendants contend that they cannot be ordered to release the mortgage because they are not the mortgagee and have not been held as such by the trial court. However, the evidence shows that defendants' attorney had control over the mortgage documents and refused to release them. All of the guarantors who met at Exchange National Bank agreed to allow the firm of Anixer, Delaney, Bilandic & Pigott to hold the mortgage documents as escrowee for their benefit. The letter explaining this transaction was signed by John Pigott on behalf of the law firm. Norman Fishman sent a written request to Pigott in an effort to receive the note and mortgage. Fishman later requested that the mortgage documents be sent to the attorneys for Meadow Lane. Pigott's refusal to honor either request prevented any sale or purchase of the realty.

The decision of the trial court will not be reversed unless it is against the manifest weight of the evidence. (*In re Marriage of Strang-Reynolds-Conour* (1991), 218 Ill. App. 3d 467, 468.) In the instant case, the trial court found that the mortgage and the debt were fully satisfied. Upon examining the record, we agree with the decision and find that it was not against the manifest weight of the evidence.

■ The third argument on appeal is whether the trial court erred in awarding attorney fees to plaintiff. Plaintiff was only successful on one of the five counts of its amended complaint. Defendants argue that the other claims were not only unsuccessful but unrelated and therefore not compensable. (*Hensley v. Eckerhart* (1983), 461 U.S. 424, 434-35, 440, 76 L. Ed. 2d 40, 50-52, 54-55, 103 S. Ct. 1933, 1939-40, 1943.) Thus, defendants contend that the trial court was wrong in its assessment of fees against them. We disagree.

The determination of attorney fees is left to the discretion of the trial court. (*Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 184-85.) A court of review will not overturn its findings unless there is an abuse of discretion. (*Pole Realty Co.*, 84 Ill. 2d at 184-85.) In keeping with the ruling of the United States Supreme Court, the Illinois Appellate Court has stated that "where the work on the unsuccessful claim is related to the work on the successful claim, an attorney fee award may be appropriate." (*Northtown Ford v. Human Rights Comm'n* (1988), 171 Ill. App. 3d 479, 490.) Plaintiff specifically prevailed on count III, which was brought under the Act. (Ill. Rev. Stat. 1973, ch. 95, pars. 52, 53, 54.) Count III alleges that Gelbart and John and James Mills are attempting to hold themselves out as mortgagees. It also alleges that all of the

partnership's obligations under the note have been fully satisfied. Finally, it alleges that Pigott falsely represented that he was acting on behalf of the partnership, obtained the note and mortgage document, and breached his fiduciary duty to plaintiff by refusing to release the mortgage documents.

The other four counts are related to count III with respect to the issue of the partnership. All of the counts, including count III, attempt to dismantle the partnership deadlock and to hold defendants responsible for any damages. Thus, we find that the trial court did not abuse its discretion by awarding plaintiff attorney fees pursuant to the Act. (Ill. Rev. Stat. 1973, ch. 95, par. 54.) Further, "[a]ttorney's fees may be awarded to a party defending an appeal when the court deems it reasonable and proper." (*Kolar v. Kolar* (1977), 47 Ill. App. 3d 37, 42.) We therefore agree to award plaintiff its fees against defendants for the expenses incurred in defending its claims in this appeal.

■ Fourth, defendants contend that the trial court's judgment against them on their counterclaim was against the manifest weight of the evidence. Defendants argue that Shapiro's $285,000 offer to purchase the partnership realty was misconstrued by the trial court as being a sham. We disagree.

Two days after the trial of this cause began, Robert Shapiro, a partner in Gelbart, submitted his first offer to purchase the partnership. His offer was for $250,000. On June 22, 1990, the next day, Bridge Land Partnership submitted an offer for $260,000. The partners in Bridge Land were Norman Fishman, Ronald Fishman and Arnold Mass. The following business day, Shapiro submitted a second offer to purchase the realty for $285,000.

Shapiro's higher offer was well above the estimated value of the property. Both offers were contingent upon the proceeds of sale being disbursed *pro rata* to the owners of the mortgage note. Shapiro admitted as much in his testimony. The colloquy between Mr. Shapiro, the witness, and Mr. Lloyd, plaintiff's counsel, went as follows:

> "A. The balance of the proceeds would be paid, the *pro rata* share of all the people who held the mortgage. No other payment for anything else, as I understand it. That's at least as I understand the arrangement.
>
> Q. And if American Garden Homes wanted to use the proceeds to satisfy some other financial obligations, it may or may not have, or the general partnership—or excuse me—the

Meadow Lane Partnership might have, that was not permitted?
A. Under this document?
Q. In fact—
A. You mean this document that I'm looking at?
Q. That's correct.
A. Yes, the answer is correct."

After examining the evidence, the trial court found that the $285,000 offer was a sham. Both offers were based upon the assumption that a mortgage existed. This court of review has upheld the trial court's finding that there was sufficient evidence that the mortgage had already been satisfied. Given that no mortgage existed, the Shapiro offers could not be given consideration. Thus, we find that the judgment of the trial court against the counterclaim brought by defendants was not against the manifest weight of the evidence.

■ The last issue on appeal is plaintiff's claim that the trial court erred in finding that plaintiff failed to prove any damages under count IV. Count IV alleged a breach of the partnership agreement and sought monetary damages. The trial court found that any delay in the sale of the partnership property did not result in a decrease in its value. At trial, Norman Fishman qualified as an expert and valued the property at less than $225,000. Both the Shapiro offer and the Bridge Land offer were far in excess of this minimum valuation.

The record indicates that on September 10, 1985, John Padromas, president of Howard Savings and Loan Association, wrote a letter of intent to purchase the property. The damages that plaintiff claims as a result of having to forgo the Padromas "offer" are speculative. The offer to purchase was still subject to zoning approval and the execution of a final contract. "[A]lthough letters of intent may generally be enforceable in Illinois [citation], such letters are not necessarily enforceable unless the parties intend them to be contractually obligatory." (*Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1098.) Here, the existence of a binding contract had not been established.

The December 1975 partnership agreement included a specific price range for the sale of the Meadow Lane Partnership realty. The relevant portion of the agreement reads as follows:

"In order to facilitate this disposition, the undersigned agree that the partnership land should be offered for sale promptly

with the initial asking price of $270,000.00 with the understanding that the minimal acceptable price for the land is $225,000.00."

The Shapiro offer was for $285,000. The Bridge Land offer was for $260,000. Thus, we agree with the finding of the trial court that plaintiff failed to prove damages resulting from a breach of contract.

For the foregoing reasons, we affirm the ruling of the circuit court and we award attorney fees to plaintiff for expenses incurred in defending its claims in this appeal.

Affirmed.

LINN and McMORROW, JJ., concur.